# Wytheville.

## VIRGINIA MIDLAND RAILROAD COMPANY v. BARBOUR & JEFFRIES, TRUSTEES.

### JUNE 15, 1899.

Absent, Riely, J.

1. ADVERSE POSSESSION BY GRANTOR—*Surrender of Possession—Disclaimer—Statute of Limitations.*—If the grantor of land remains in possession of it after conveyance he holds in subordination to the grantee, but it is not necessary that he should first surrender possession to the grantee before he can assert an adverse title. A clear, positive, open and continued disclaimer and disavowal of title in the grantee, and the assertion of an adverse right by the grantor, inconsistent with the title of the grantee and brought home to his knowledge, are sufficient to cause the statute of limitations to begin to operate in favor of the grantor.

2. ADVERSE POSSESSION—*What is—Claim of Title—Statute of Limitations.*—The actual possession of land, claiming title thereto and denying the right of all others, although without color of title, is adverse possession. Such hostile claim accompanied by uninterrupted possession and occupation, cultivation of the soil, building upon and paying taxes on the land for the statutory period, is sufficient to defeat the claim of the true owner of record. It is immaterial whether the claim of the occupant was, in the first instance, good or bad. If, however, the occupation is accompanied by a mere claim of title, but without color, the adverse holding is limited to the actual enclosure of the claimant.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced June 22, 1898, in a suit in chancery, wherein the

appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Eppa Hunton, Jr.*, for the appellant.

*Barbour & Rixey*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The only question involved in this appeal is whether the appellees and those under whom they claim had been in actual adversary possession of the land in controversy under a claim of title for more than fifteen years prior to the institution of the suit.

The facts in the case were agreed, and are as follows:

" That the lot of land in the bill and proceedings mentioned was conveyed to John T. Hicks by E. B. Hill by deed, dated March 9, 1868; that at this time Hicks was in possession of the lot, and continued to be in possession until his death, in 1887; that under proceedings in the bankrupt court regularly and legally held, said land was regularly sold and purchased by the W. C., Va. Mid. & G. S. R. R. Co., under an order of said court regularly entered. L. L. Lewis, assignee in bankruptcy, by deed, dated June 13, 1878, undertook to convey said lot to the Washington City, Virginia Midland & Great Southern Railroad Company; that John T. Hicks at that time had possession of the said lot and had it enclosed, and that shortly after the date of the said deed, B. F. Nalle, the agent of the railroad company, came to Culpeper and demanded possession of the said lot from the said Hicks. Hicks, with a shotgun in his hand, ordered Nalle and two hands he had with him off the place, and told them that the lot did not belong to the Virginia Midland Railroad Com-

pany, that they had no title to it, and that it belonged to him, and that he would shoot him unless he got off; that Nalle did leave the property in the possession of Hicks; that Hicks lived until the year 1887, when he died, leaving a widow, Kate Hicks, and an only son, C. W. Hicks; that after the death of John T. Hicks, his widow and son remained in possession of the said property, kept it enclosed with a substantial fence, cultivated it and rented it out, and treated it in all respects as their own and paid taxes thereon; that C. W. Hicks died about 1890, leaving his mother as his only heir, and that she, two years thereafter, built a substantial frame house on the said lot, and resides thereon at present with her husband; that the station and depot lot of the railroad company bounds the lot in controversy on one side, and the right of way of the company bounds it on another; that from the time that John T. Hicks ordered the agent of the company off the premises down to the present time the railroad company has made no further demand or attempt to get possession of the said lot, but have maintained a wire fence between their depot lot and the lot in question; that John T. Hicks during his life, and his son and wife after his death, and down to the present time, have been in actual possession of the property. It has been actually enclosed by them and in their actual possession. They have cultivated it, pastured it and rented it out throughout that period without interruption. They have paid the taxes thereon and have openly and notoriously claimed it as their own, and denied the right of the railroad company thereto, notwithstanding their deed to the said lot."

It is insisted that, upon this state of facts, the possession of the appellees and those under whom they claim has never been adverse to the title of the appellant. This contention is based upon two grounds. First, that Hicks, after the sale of the land in the proceedings in bankruptcy, was a mere tenant by sufferance, holding in subordination to the title of the appellant; and, second, that when he denied the title of the appellant and

claimed ownership in himself, he was a mere squatter without a scintilla of title.

It is true that where the grantor of land remains in possession of it after conveyance, he holds in subordination to the title of the grantee; and in the earlier decisions this court inclined very strongly to the view that where one was in possession of land in subordination to another's title he could not assert an adverse title without first surrendering the possession of the premises. This question was carefully considered in the case of *Creekmur* v. *Creekmur*, 75 Va. 430, 436. In that case, Judge Staples, who delivered the opinion of the court, after commenting upon the earlier cases, says that " notwithstanding the doubt expressed in those cases, it is now settled, by a great weight of authority, that although a party may enter into the possession in privity with the true owner, he may, without first surrendering it, dissever such relation and claim by adverse title.   *   *   * The only distinction between this class of cases and those in which no privity existed, is in the degree of proof required to establish the adverse character of the possession. The rule now is that where the possession is originally taken or held under the true owner, a clear, positive and continued disclaimer and disavowal of title, and the assertion of an adverse right, to be brought home to the knowledge of the party, are indispensable before any foundation can be laid for the operation of the statute of limitations. The statute does not begin to operate until the possession, before in privity with the title of the true owner, becomes tortious and wrongful by the disloyal acts of the occupying tenant, which must be open, continued and notorious, so as to preclude every doubt as to the character of the holding, or the fact of knowledge on the part of the owner." See also *Whitlock* v. *Johnson*, 87 Va. 323, 327; *Reusens* v. *Lawson*, 91 Va. 226; *Chapman* v. *Chapman*, 91 Va. 397; *Hulvey* v. *Hulvey*, 92 Va. 182, where the rule as laid down in *Creekmur* v. *Creekmur* has been substantially reiterated and approved.

The facts agreed clearly show that in the year 1878 John T. Hicks denied the title of the appellant to the lot in controversy, refused to surrender possession to its agents, drove them from the premises, claimed the land as his own, and that of all these facts the appellant was then fully informed; that Hicks and those who claim under him had been in the actual and uninterrupted possession and occupation of the land, cultivating, building upon, paying taxes on and claiming it as their own from that time to the institution of this suit.  It may be true, as contended, that Hicks, when he denied the title of the appellant, and asserted ownership in himself, did not have a scintilla of title to the land. The question in cases of adverse possession is not whether the claim asserted is good or bad, but whether there has been a hostile claim of title and continuous possession under it for the statutory period.  Neither is it necessary that such hostile claim should be under color of title, that is under a deed or other writing.  But where it is a mere claim, that is, a mere assertion of a right without  any paper title, the adverse holding is limited to the actual enclosure of the claimant.  *Kincheloe* v. *Tracewells,* 11 Gratt. 605; *Creekmur* v. *Creekmur, supra; Sulphur Mines Co.* v. *Thompson,* 93 Va. 319-20; Hutchinson on Land Titles, sec. 390.

It clearly appears that he did claim the land as his own, and continued in possession and occupation of it under that claim, from the year 1878 until his death, in the year 1887; that since his death his widow and son kept the lot enclosed, and continued in possession of it, paying taxes thereon, claiming and using it as their own until the son's death, in the year 1890; that since that time his mother, as his sole heir, has built a substantial frame house upon it in which she and her present husband reside, and that during the whole period from the year 1878 to the institution of this suit in the year 1898, the said Hicks and those who claim under him have been in the actual possession and occupation of the lot, paying the taxes thereon, denying the

title of the appellant, and using and claiming it as their own. It further appears that from the year 1878, when Hicks ordered the agents of the appellant from the lot, denied its title and asserted his ownership to it, the appellant made no further demand or attempt to obtain possession of the lot, but maintained a fence between its depot lot and the lot in question, and thus acquiesced in the adverse claim asserted by the appellees, and those under whom they claim.

The record in this case shows that the possession of the appellees and those under whom they claim was inconsistent with the title of the appellant; that it was accompanied by a claim of title exclusive of the rights of all others, was definite, notorious, and continued for more than the statutory period. It also shows that the land was actually enclosed during that period. Under the authorities this was sufficient to bar the right of the appellant to the land in controversy, however good its title may have been originally. *Thomas* v. *Jones*, 28 Gratt. 383, 387; *Creekmur* v. *Creekmur, supra;* Judge Baldwin in *Taylor* v. *Burnside*, 1 Gratt. at side page 190-2; *Humbert* v. *Trinity Church*, 24 Wend. 587, 604; Wood on Stat. of Lim., sec. 259, at page 530-1; Hutchinson on Land Titles, secs. 390-1; Newell on Ejectment, pp. 706-7.

We are of opinion, therefore, that there is no error in the decree appealed from, and that it must be affirmed.

*Affirmed.*