### BOGGS et al. v. BRIGHT.

(District Court, E. D. Virginia. March 13, 1915.)

1. WITNESSES ☞268—CROSS-EXAMINATION—SCOPE—HEARSAY.

The mere fact that testimony elicited on cross-examination is not covered by the pleadings and is hearsay does not necessarily require its exclusion.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948; Dec. Dig. ☞268.]

2. TRUSTS ☞89—RESULTING TRUST—SUFFICIENCY OF EVIDENCE.

In a suit to establish a resulting trust in lands, the legal title to which was held by a sister of plaintiff's ancestor, evidence *held* to show that the ancestor paid for the land, taking the title in his sister's name, and that she lived there dependent upon him, not he on her.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 134–137; Dec. Dig. ☞89.]

3. TRUSTS ☞362—RESULTING TRUST—SUIT—INCONSISTENT DEFENSES.

In a suit to establish a resulting trust, where the holder of the legal title at first claimed that she purchased the property, paying the consideration therefor herself, she should not, after failing to establish that claim, be allowed to claim that it was a gift to her.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 560–562; Dec. Dig. ☞362.]

4. GIFTS ☞47—PAYMENT OF PURCHASE PRICE—RELATIONSHIP BETWEEN PARTIES.

The rule that, where one who pays the purchase price for a tract of land and has it conveyed to another, whom the purchaser is legally or morally bound to support, a gift will be presumed, does not apply where the circumstances show that no gift was intended.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 81–86; Dec. Dig. ☞47.]

5. GIFTS ☞49—EVIDENCE—PURPOSE.

In a suit by the heirs of one who purchased land, taking title in the name of his sister, to establish a resulting trust therein, evidence *held* to show that the purchaser had no intention of making a gift to his sister, but intended that she should hold the title for him.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 95–100; Dec. Dig. ☞49.]

6. TRUSTS ☞365—RESULTING TRUST—ENFORCEMENT—DELAY.

Where the holder of the title of land, which had been purchased by another, was in fact holding it as trustee for the purchaser, the delay of the purchaser and his heirs in asserting a claim to the land does not defeat their right to do so later.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 568–573; Dec. Dig. ☞365.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. ADVERSE POSSESSION ⟜60 — RESULTING TRUST — POSSESSION BY BENE-FICIARY.

Where the purchaser of a tract of land, who had the title conveyed to another, went into actual possession thereof, and remained in possession and control, his sister, who lived with him, and who later acquired the legal title, could not rely on the statute of limitations in a suit by the purchaser's heirs to establish a resulting trust, since she acquired title with the knowledge of the purchaser's possession and subject to equities in his favor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–312. 323, 328; Dec. Dig. ⟜60.]

8. EQUITY ⟜65—MAXIMS—CLEAN HANDS.

Equity will not aid persons to get relief from situations which result from the conveyance of their property in fraud of creditors.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. ⟜65.]

9. ABATEMENT AND REVIVAL ⟜77—DEATH OF DEFENDANT—SUBSEQUENT PRO-CEEDINGS—NEW DEFENSE.

Where the original defendant, in a suit to establish a resulting trust, died after all the proofs had been taken, her devisee, when substituted as defendant, should not be permitted to interpose a new defense that the title to the land was placed in the name of the original defendant to defraud the creditors of the purchaser.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 488–491; Dec. Dig. ⟜77.]

10. TRUSTS ⟜372—RESULTING TRUST—EVIDENCE—FRAUD OF CREDITORS.

In a suit to establish a resulting trust, evidence *held* not to sustain a defense that the title was placed in the name of another by the purchaser in fraud of his creditors.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 600–603; Dec. Dig. ⟜372.]

11. TRUSTS ⟜362—RESULTING TRUST—DEFENSE—FRAUD OF CREDITORS.

Where all debts owed by a purchaser of land, who had title placed in the name of his sister, had been settled shortly after the conveyance was made, and more than 20 years before the suit was brought to establish the resulting trust, the devisee of the sister cannot defeat recovery on the ground that the title was placed in the sister's name to defraud the creditors of the purchaser.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 560–562; Dec. Dig. ⟜362.]

In Equity. Suit by one Boggs and others against Nancy J. Bright to establish a claim to an interest in land. On final hearing. Decree entered for complainants.

The complainants, residents and citizens of the states of Ohio and Washington, filed their bill of complaint against the defendant, Nancy J. Bright, a resident and citizen of the state of Virginia and of this judicial district, charging that they are heirs at law of the late William M. McGruder, of Henrico county, Va., and as such entitled to an undivided one-eighth interest in a tract of land containing 335 acres, situated on the north side of the river road, in the county of Henrico, as to which he died intestate; that said land, while standing in the name of the said Nancy J. Bright at the time of his death, as it had been for many years before, was not her property, and she had no beneficial interest therein, but like those who preceded her during the ownership of said McGruder, viz., Fannie Wrenn and John T. Jones, she simply held the naked legal title as trustee for him, and for his convenience, and that the said McGruder, at the time of his death, lived upon said property, in exclusive, open, notorious, and uninterrupted possession thereof, as he had done for more

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

than 35 years theretofore, and cultivated the same as a farm, and exercised acts of ownership of all kinds over it.

Said Nancy J. Bright filed an answer to this bill, denying that complainants had any interest in the property, or that said McGruder at the time of his death had any interest therein, or died seised thereof, or that during his lifetime, and for years prior to his death, he was in open and notorious possession thereof, holding the same adversely to her. She further averred that she was the fee-simple owner of the property, having acquired the same from John T. Jones more than 20 years before the death of said McGruder, by proper deed, and for full consideration, and denied that she held the mere legal title to the property as trustee for McGruder, and had no beneficial interest therein. She further averred that upon complainants' own showing, the deed having been made to her by one who held the property for said McGruder, her brother, after the long lapse of years, the presumption of a gift from her brother to her was raised in her favor, and that her brother in his lifetime would have been, and his heirs since were, estopped at this late day from setting up their claim. She pleaded, in addition, the statute of limitations of Virginia.

Under this pleading, depositions were taking running through the years 1911, 1912, and 1913, the final proofs filed by the defendant on the 28th of January, and by the complainants on the 30th of January, 1913. Shortly before the case was to have been submitted, Mrs. Bright died, having devised the real estate in question to her niece, Mrs. Fannie W. Higginbotham, formerly Miss Fannie Wrenn, by will admitted to probate on the 10th of October, 1913. On the 8th of November, 1913, the said Fannie W. Higginbotham filed her answer, reaffirming the defenses set up by her devisor, and in addition averred that the deed from Jones to her aunt, under which she held the property, was not made for the convenience of McGruder, as claimed, but, if so held, was intended by McGruder to conceal the same in fraud of his creditors.

No additional or other evidence was taken in the case after the filing of this answer, and it was submitted on the 24th of November, 1913, for final action.

Marshall M. Gilliam and Addison L. Holladay, both of Richmond, Va., for complainants.

Conway R. Sands and W. W. Crump, both of Richmond, Va., for defendant.

WADDILL, District Judge (after stating the facts as above). The court will consider the case, upon the pleadings and proofs arising upon the answer of Mrs. Nancy J. Bright, before reviewing the same in the light of Mrs. Higginbotham's answer, and will first dispose of the two preliminary questions arising upon exceptions taken during the introduction of the testimony.

[1] First, complainants ask that certain portions of the cross-examination of H. A. Atkinson, a witness called by them, be stricken out, for the reason that the same was not responsive to any matter about which inquiry had been made in chief, was irrelevant to any issue raised by the pleadings, and was purely hearsay, consisting merely of the witness' opinion as to matters about which he admitted having no personal knowledge; and, secondly, that certain copies of papers, purporting to be a part of the record of the proceedings in a suit in the circuit court of the county of Henrico, wherein Nancy J. Bright was plaintiff and William M. McGruder's executor and others were defendants, offered to be filed in this cause, might be excluded.

The court, after much consideration, and with considerable doubt as to the last-named exception, has concluded to overrule both motions. As to the first, it cannot be said that the questions objected to were not permissible on cross-examination of the witness, though it

is largely true that the matters sought to be inquired into were not covered by the pleadings, and it is entirely true that Mr. Atkinson's statement is entitled to little or no weight, being purely hearsay. As to the second motion and exception, much greater doubt exists; but the court feels that, although the record involved only incidentally bears on the subject of this litigation and is between different parties, still its rejection might be prejudicial, and hence allows the same to be introduced, although as a record it seems to be incomplete.

Coming to the merits of the case, complainants insist that the land in question was the property of Capt. McGruder, that he paid for the same with his own money, that Mrs. Bright held title thereto as a mere naked trustee, that she was a dependent sister, for whom he cared and provided through a long life; while the defendant Mrs. Bright claimed the property as her own, averring that she paid full consideration therefor to John T. Jones, and was in no way bound or affected by any relation that existed between Jones and McGruder, whatever that relationship may have been. The determination of this question largely depends upon a correct solution of what the real facts are as respects the contentions of the two parties. On the one hand, it is in effect that McGruder was a mere dependent of his sister, Mrs. Bright; whereas, on the other, it is that she was absolutely dependent on him, without means, and that he cared and provided for her, as he also did for another widowed sister, Mrs. Wrenn, the mother of Mrs. Higginbotham, and her two children, through a long series of years.

[2] The court has given much consideration to this phase of the case, and its clear and deliberate judgment is that the complainants, as respects the occupancy and ownership of Capt. McGruder and Mrs. Bright in the property in suit, have established their case. That there is no real foundation in or warrant for the suggestion that during the 35 years William M. McGruder and his sister lived together on this property as their home, that he was a mere dependent, so to speak, of hers, and not the full owner and occupier of the premises, but, on the contrary, she was supported by him, and was the object of his care and solicitude. This record does not sustain the view either that McGruder occupied a subordinate relation to any one during this long period, that he was a mere figurehead, or, as is suggested in taking the testimony, "an overgrown, rollicking, fox hunter"; on the contrary, it shows that he was a man of affairs from his early manhood to the day of his death, that he acquired from his father the ancestral home at Short Pump, Henrico county, Va., a place in those days of no mean importance, that he shortly thereafter entered the Confederate army as captain of the Henrico Cavalry, and when the war was over he returned to his home at Short Pump, and about that time had to care for his two widowed sisters, Mrs. Bright and Mrs. Wrenn —the latter having two children, Fannie, now Mrs. Higginbotham, and another sister, who married Mr. Sinton, the two girls having been born, it appears, in the McGruder home.

In a few years, to wit, in 1870, he was elected treasurer of Henrico county, which was one of the largest and wealthiest counties in the state, and continuously held this position for a period of some 13

years, when he retired from public life. About the time of and short-ly after becoming treasurer, Capt. McGruder acquired from the heirs of the late James A. Fisher two valuable tracts of land on the river road, about eight miles west of the city of Richmond, in these proceedings referred to—the first tract on the 29th of June, 1869, being on the south side of the road, and opposite to Duval's; the second tract, of 334 acres (Duval), on the north side of the road, the subject of this litigation, being conveyed by deed of the 13th of September, 1872. During the fall of 1872 McGruder moved from his home at Short Pump down to the newly acquired property, the residence being on the north side of the road, and known as "Sleepy Hollow," bringing with him his two widowed sisters and two nieces. His brother, Dr. McGruder, also removed to the new home, and the four brothers and sisters, with the two nieces, resided there, with the exception of Mrs. Sinton, who moved away, until they one by one were taken by death; Mrs. Higginbotham being now the survivor, Mrs. Bright having survived all the others. Capt. McGruder never married. He was the owner of the property, and head of the new home; his sister, Mrs. Wrenn, having control and management of the housekeeping, especially during her lifetime, and after that the same was assumed by her daughter, Mrs. Higginbotham, and Capt. McGruder's sister, Mrs. Bright. Capt. McGruder managed, controlled, and directed the affairs of the place, and conducted the farm on his acquisition of the property, as an entirety, until the sale of the portion on the south side of the road in May, 1906, and the residue until his death in November, 1907. From the expiration of his office as treasurer in 1893, some 20-odd years before his death, he was engaged exclusively in the cultivation of this large and valuable farm. The testimony seems undisputed that at the time of the purchase of this property McGruder paid for the same, exchanging 200 acres of the Short Pump farm at the price of $2,000 in part payment of the land on the south side of the river road; that he, as testified to by Robert H. Fisher, one of the vendors of the property to him, caused the same to be conveyed to Miss Fannie Wrenn, Fisher's statement being that:

"He (referring to Capt. McGruder) wanted the deeds made to her. He had them made to her."

There is no suggestion that at this time Mrs. Bright or any one else, other than Capt. McGruder, paid anything on account of this property, or had anything whatever to do with its acquisition; and the court thinks the testimony clearly and conclusively establishes the fact that he at that time bought and paid for this property with his own money, that he shortly thereafter took possession thereof, and continued in the exclusive, open, notorious, and uninterrupted occupancy thereof from that time to the day of his death, covering a period of some 35 years.

The suggestion that Mrs. Bright had means with which to acquire this property, or that she subsequently, some 12 years thereafter, acquired it from John T. Jones for full consideration with means of her own, has no substantial support from the testimony in this case. On the contrary, the evidence bears out irresistibly the conclusion that

upon the death of her husband, and as a result of the disasters of the Civil War, she was left without means, and that her brother, Capt. McGruder, as he did for another widowed sister and her two children, faithfully and affectionately supported, maintained, and cared for them for well-nigh half a century.

The complainants' contention respecting the ownership and legal title to this property, and transmission of title thereto, is apparently borne out by the record of transfers and conveyances of the same from time to time; that is, it was first conveyed to Miss Fannie Wrenn, now Mrs. Higginbotham, at the direction of Capt. McGruder, the owner, and she held it from the date of the conveyances to her in 1869 and 1872 down to the 25th of August, 1880, when she executed a power of attorney to her uncle, Capt. McGruder, giving him sweeping and unlimited power to deal with the property, authorizing him to convey the same, with special or general warranty, for such consideration as he deemed proper, and to sign her name to such deed or deeds, and to acknowledge the same as her own proper act and deed, to receive and receipt for all purchase moneys or other consideration in her name and stead, and expressly relieving the purchaser or purchasers from responsibility to see to the application of the purchase money, assuring them full and complete title to the property. On the next day, the 26th of August, 1880, Capt. McGruder, as attorney in fact for Miss Fannie Wrenn, conveyed this property for an apparent consideration of $9,500 to John T. Jones. The testimony respecting this transfer to John T. Jones is to the effect that Capt. McGruder, anticipating his niece Fannie's early marriage, desired that the legal title to his property be not longer held by her, but conveyed to his friend, John T. Jones, and he so conveyed the same, as is shown by the record, under the power of attorney from Miss Wrenn.

This transaction was consummated with due formalities, checks delivered, and a trust deed taken to secure the unpaid purchase money, etc., which was later released; but there is no pretense, as a matter of fact, that any actual consideration ever passed. McGruder was dealing with his own property, and transferring the title from one friend to another. Neither holder, however, of the apparent title to the property, at any time made any actual claim thereto, and each fully and in all respects recognized the ownership thereof by McGruder. John T. Jones continued to hold the legal title to the property from August, 1880, until the 3d day of March, 1884, when he for an apparent consideration of $9,580 conveyed the same by McGruder's direction to the latter's sister, Nancy J. Bright, with general warranty, and the property stands in her name to the present time. Both the grantee therein and Capt. McGruder, at the time of the conveyance from Jones, were living upon the property, McGruder in open, notorious, adverse, and undisputed possession thereof, Mrs. Bright up to that time confessedly having no interest therein; and the two continued to live there to the day of McGruder's death, as they had theretofore done. The testimony as to the reason for this conveyance is that Jones became apprehensive, on account of security obligations of a brother-in-law, that McGruder's property thus standing in his name, and in which he (Jones) had no beneficial interest, might become in-

volved with his; that no consideration was paid for the property, upon the execution and delivery of this deed, and the transfer was made at the instance of McGruder, and solely for the purpose of preserving to him his property.

[3] The defendant suggests that no resulting trust arose in this property in favor of Capt. McGruder, assuming him to have paid the purchase price, because, if the same was conveyed by his direction to her, according to complainants' contention, the presumption would be that he intended to give it to her; and she invokes the well-recognized equitable doctrine that, where property is bought by one and conveyed to another, who has a legal or moral claim upon the real purchaser for support, the law presumes that the conveyance was intended as a gift, and cites in support of her contention many cases sustaining that doctrine, among them Humes v. Scruggs, 94 U. S. 22, 24 L. Ed. 51, Jackson v. Jackson, 91 U. S. 122, 23 L. Ed. 258, Beecher v. Wilson, 84 Va. 817, 6 S. E. 209, 10 Am. St. Rep. 883, Trumbo v. Fulk, 103 Va. 73, 78, 48 S. E. 525, White & Tudor, Lead. Cas. pt. 1, p. 314; 2 Min. Inst. 191, and many others.

[4] Just how Mrs. Bright can avail herself of this defense, and at the same time insist that she bought and paid for the property, cannot well be seen. The two positions are entirely inconsistent. If she acquired the property herself, it is hers of course, as it would be if he gave it to her; but she could not get it both ways, and should not, upon failing in her first contention, be allowed to take an entirely different and inconsistent one. But that is not all. Assuming the doctrine to be what she contends for, and there is no dispute about it, still a gift must have been intended. If all the facts and circumstances exclude the theory of a gift at the time of the conveyance, then such conveyance will not be treated as a gift, although the element of moral, if not legal, obligation to support existed.

[5] Here, however, McGruder was having a deed made conveying his own home, where he had lived for many years, his sister residing with him, and upon which property he continued to reside with unbroken exercise of ownership and control thereof; and he placed the legal estate of this property in the name of his sister, as he had carried it in the names of others from time to time since he acquired it; and there is nothing to suggest that he meant in so doing to have it held adversely to him, but, on the contrary, that it should be held by the one to whom it was conveyed, as it had been theretofore by others, and certainly there is nothing to indicate that by this deed he meant to devest himself of his house and home in favor of this sister. If Mrs. Bright had acquired this property in this way, it would not have occurred to her to attempt to prove her ownership thereof by purchase with her own means, and at least, failing in her first effort, she should be required to introduce some evidence to establish the latter. Certainly, if she purposed to assert a claim through gift of the property, against the one who had theretofore held and continued to remain in open and notorious control thereof, and to manage and treat the same as his own, and had this conveyance been intended as a gift, Mrs. Bright would almost certainly have been able to establish the same by many witnesses, among them members of the household, some

of whom resided on the farm with Capt. McGruder and herself at the time of the alleged gift and to the day of his death.

[6] The defendant says that complainants should not be allowed to assert an interest in the property, which Capt. McGruder himself did not claim, and which he recognized in his will as being her property. With the first part of this contention the court does not agree. The complainants did not unreasonably delay the assertion of their claim, and if it be that this property was held by Mrs. Bright not as her own, but as trustee for Capt. McGruder, then neither he in his lifetime, nor his heirs at law, should be estopped from so doing now; and the court is not greatly impressed with the fact that either Capt. McGruder in his lifetime, or Mrs. Bright in her lifetime, may have referred to the property as that of the other, for the reason that the fact that it belonged to one, and stood in the name of the other, might naturally have made either of them refer to it as the property of the other. Certain it is, so far as the reference of Capt. McGruder in his will to the portion of her landed estate conveyed to T. Percy Davie, in connection with his (McGruder's) disposition by his will of the notes given for the purchase money, is concerned, it is not entitled to great weight in support of the defendant's claim. The property had been sold to Davie. It had stood in Mrs. Bright's name, and she had made the conveyance. McGruder conducted the entire transaction, and when he came to dispose of those notes by his will, made in favor of Mrs. Bright and assigned to him, and by him willed, it was natural that he should have referred to it as her property, because they were notes given for the purchase price of property standing in her name that he was disposing of.

The powerful circumstance that impresses the court in connection with this matter is the fact that those purchase-money notes given for this property were transferred to Capt. McGruder, which is precisely in accordance with the contention made by the complainants as to what was done in every conveyance of this property, viz., that it was conducted by Capt. McGruder, and treated by him as his own: and this is borne out by the entire record, and, considered in the light of McGruder disposing of these notes by his will, is well-nigh conclusive as to what are the real facts in this case, and it certainly removes all doubt as to his understanding of this transaction, and that he did not understand that he had given his interest in his property to, or parted with his actual ownership thereof to any one. On the contrary, he expressly disposed of the purchase-money notes, first providing for the payment of three legacies of $700 therefrom, and the setting aside of $1,000, another part thereof, for the erection of a monument over his grave, and the permanent upkeep of his section, and he provided that the monument should be erected under the direction of the defendant, Mrs. Higginbotham, and a nephew, the son of a deceased sister, to whom he gave the residue of the said purchase money of $9,000, first providing, however, that for a period of five years the said Mrs. Higginbotham and his sister, Mrs. Bright, should be paid the interest on said balance of $7,300, and the bequest was made to his nephew upon this express condition; and the said McGruder further bequeathed to his said sister and niece, subject to the

222 F.—46

payment of his funeral expenses and such small debts as he might owe, an amount of "about $3,000" which he had in a savings bank, together with all of his personal property on the farm, consisting of horses, cows, hogs, wagons, carts, buggies, farming implements, corn, and provender, together with his household and kitchen furniture.

The court is not unmindful that the assignment of the notes to Capt. McGruder was set aside in the suit in the Henrico circuit court, and of which portions of the record have been, over the objection of the complainants, introduced herein. This, however, does not change its view of the real merits of this controversy. Many considerations may have caused the Henrico court to annul an assignment of notes, alleged by an old lady nearly 80 years of age to have been conditionally executed, or made under misapprehension. This court is not favored with the evidence in that case, and hence can form no idea of the merits of the controversy, further than that McGruder, whose acts were being expressly assailed, was dead, his reason for and explanation of what he did, which is important as bearing on the merits of this controversy, could not be given. His voice was stilled by death, but, notwithstanding that, the court affirmatively vindicated him from all fraud in the transaction, in the following significant language:

"The court is further of opinion that there is no evidence in the record that Capt. W. M. McGruder attempted or desired to commit fraud upon any one."

[7] The defendant, Mrs. Bright, further relies upon the plea of the statute of limitations, and insists that, having taken immediate possession of the lands upon the acquisition of the same from John T. Jones in March, 1884, and more than 15 years having elapsed before the institution of this suit, the same is barred by the statute. The legislation in question is undisputed, but the same cannot avail this defendant, as against either Capt. McGruder, or his heirs at law. McGruder, from the time of the purchase of this property, was, as he continued to be until the time of his death, in open, notorious, and undisputed control thereof; and, the defendant having acquired her title through John T. Jones, by deed dated March 3, 1884, she took the property charged with knowledge of all the rights and equities that arose in his favor. Authorities to support this view may be said to be almost without number, the leading federal cases being Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Noyes v. Hall, 97 U. S. 34, 24 L. Ed. 909; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463, to which special reference is made (the last-named case is of special interest as applicable to the facts in this case). See, also, Chapman v. Chapman, 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846, a leading Virginia case, to which, with the authorities cited, reference is also made. These cases are apparently conclusive against the right of the defendant to interpose the plea of the statute of limitations, and go far to hold that, Mrs. Bright having acquired the property in 1884, which was then in the open, notorious, and adverse possession of McGruder, the statute in question is a bar against her in enforcing her rights against either McGruder or his heirs, and clearly so if she claims to be a purchaser from John T. Jones,

and an adverse holder as against McGruder. Virginia Midland R. Co. v. Barbour & Jeffries, Trustees, 97 Va. 118, 33 S. E. 554, and cases cited.

Coming, now, to the consideration of the case as presented by the answer of Mrs. Higginbotham, who reaffirmed the defense made by her aunt, Mrs. Bright, of whom she is the sole devisee, no comment need be made, further than that of the new ground of defense that she sets up, not heretofore made in the cause, that the conveyance in March, 1884, from John T. Jones to the said Nancy J. Bright, was not made, as alleged by the complainants, for the convenience of McGruder, with a view of holding the legal title to the property conveyed of which he claimed to be the equitable owner, but for the purpose of concealing any such right, title, or interest from his creditors, and to prevent them from getting knowledge of such right, title, or interest, so they could subject the same to his debts, in order to defraud the creditors of said McGruder; he being at the time of the conveyance, and long prior thereto, greatly in debt, and having judgment debts amounting to several thousand dollars against him unsatisfied, which the property would become subject to.

[8, 9] The fact that courts of equity will not lend their aid to persons to relieve them from embarrassing situations in which they find themselves, as the result of the conveyance of their property in fraud of creditors, is well recognized, and no authority need be cited to maintain so elementary a proposition. But that the same has application to this case, under its peculiar facts and circumstances, does not follow, and whether the defendant would be allowed, under the pleadings in this case, to interpose such defense at the stage she seeks to, and whether she may be so circumstanced as to do so at all, are different propositions. If it be true, as contended by complainants, that McGruder was the beneficial owner of this property always, and that the title was in Mrs. Bright at the time of McGruder's death, as it had been in the names of others from time to time, as a convenience merely to him, then confessedly his heirs, as against such trustee, would not be prevented from claiming the property. This is exactly the claim they make. Mrs. Bright, the new defendant's aunt and devisor, came into court and claimed the property as her own, by purchase, and if not, by gift, and if not, by long acquiescence by McGruder in her right, and made no suggestion of the new defense the new defendant sets up. There exists no doubt of the right of a court of equity to hear and determine the issue thus made between the parties. The evidence was fully taken on both sides, and the case was ready to be submitted when the then defendant died, and this new defense is for the first time interposed by the present defendant, the devisee of Mrs. Bright.

[10] The court holds that the claim of complainants, as thus put in issue, was and had been established upon the proofs adduced, before the interposition of the new defense. Mrs. Bright in her lifetime ought not to have been heard to amend her pleadings at such a stage, to introduce such a defense, and surely one claiming under her should not have a greater right. The court thinks not. The plea has been interposed, however, and the case will be considered in the light of its

introduction, however much it may be regretted that such an issue should have been put forward in the concluding hours of a long litigation, after the original defendant had died, and which so seriously reflects upon the good name of her brother, and that, too, by a niece, as to whom the record is replete with many evidences of facts and circumstances that apparently should have forbidden her from doing anything that would have reflected upon the memory of her foster·father and dead uncle. Upon the incoming of this plea, it will be observed, and indeed after the revival of the case in the name of the present defendant, no other or additional testimony was taken, and the case stands, so far as this issue is concerned, as it did before it was presented. The only evidence in the record, as the court recalls, that bore especially upon such defense, was that the defendant, in attempting to prove that Mrs. Bright had means, also proved that McGruder was in debt; that is to say, that there was an old judgment against him as one of the sureties on the bond of a former sheriff of the county of Henrico, coupled with such inferences as might arise from the property having been held from time to time in the names of various persons of record, though Capt. McGruder always was in open, notorious, and uninterrupted possession of it, and was its reputed owner, and also from a statement made by the witness, H. A. Atkinson, Jr., the attorney for Capt. McGruder, who prepared most of the conveyances under which the property was held during McGruder's ownership of it.

This witness, called by the complainants, did state on cross-examination, which counsel for complainants moved to exclude, that he believed that the property was held under these different conveyances on account of an old judgment of the commonwealth; but he expressly stated that this was merely his opinion, and that he knew nothing personally about it, though he believed the other parties to the several transactions did know. The statement of the witness at the time, when no such issue was before the court upon the pleadings, and which merely gave his opinion, clearly, in the absence of other testimony, would not be sufficient to establish this defense, and disentitle the complainants to the benefit of the decree in their favor, if they had shown themselves entitled to it upon the pleadings and proofs in the cause; and especially should it not do so when such defense is interposed by a person who neither offers to testify herself, nor produces other testimony, and having the relation to the several transactions that Mrs. Higginbotham had, if, indeed, she should be allowed to make such defenses at all. If the defense she seeks to set up be true, then there is no fact in this record more patent than that she of all persons had full knowledge of the facts, and was an active party thereto, and participated therein, as she lived in the house with her uncle for years, long held the legal title to the property for him, then executed to him the power of attorney under which he sold, and was his clerk and confidential relative. To allow her to avail herself of this defense, to defeat the lawful heirs of the equitable owner of the property, who had already shown their title thereto, would be a travesty upon justice, and a reversal of the doctrine in favor of one of the very parties it was sought to punish.

[11] Moreover, the suggestion at this late day that the property had been held by her aunt under the deed from Jones to defeat her uncle's creditors, upon the face of this record, should not avail. The deed from Jones to Mrs. Bright was made on the 3d of March, 1884. Four days thereafter, and more than a year before the recordation of the conveyance, the date of delivery not appearing, the Legislature of Virginia, on the 7th day of March, 1884, passed a general act, in effect releasing all judgments upon bonds in favor of the commonwealth, executed prior to the 1st of July, 1870, by public officers, whose duty it was to collect state and county revenues; that is to say, that no proceedings should be had upon said bonds, or to enforce judgments thereon, from and after the 1st day of January, 1885; and, in addition, subsequently to that time, to wit, on the 20th day of December, 1886, the particular judgments against McGruder were settled and compromised, and he released from all liability thereon. Thus, for more than 20 years before his death, there is no suggestion of his owing any one, and the debts sought to be set up by this plea had been fully extinguished.

The conclusion of the court from the whole case is that at the time of her death Mrs. Nancy J. Bright was not the beneficial owner of this property, but held the same as trustee for William M. McGruder, the actual owner thereof; that said property did not pass by the will of Nancy J. Bright to her devisee, the present defendant, Mrs. Fannie Higginbotham; and that the complainants herein, as heirs at law of said William M. McGruder, are entitled to an undivided one-eighth interest in said real estate.