COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia

NANCY C. VELDHUIS, AS TRUSTEE OF THE
NANCY C. VELDHUIS REVOCABLE LIVING TRUST

v.      Record No. 0776-22-4

OPINION BY
JUDGE JUNIUS P. FULTON, III
MAY 9, 2023

TAREK C. ABBOUSHI AND
KYE S. ABBOUSHI

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

John C. Altmiller (Leonard C. Tengco; Linh H. Ly; Pesner Altmiller
Melnick DeMers & Steele PLC, on briefs), for appellant.

F. Andrew Carroll, III (Land Carroll & Blair, P.C., on brief), for
appellees.

This case arises out of a residential property line dispute between two neighbors. On

June 10, 2020, Tarek C. Abboushi and Kye S. Abboushi (the "Abboushis") filed a complaint

against Nancy C. Veldhuis, as Trustee of the Nancy C. Veldhuis Revocable Living Trust

("Nancy"), seeking to establish a boundary line to obtain title by adverse possession to part of

certain real property owned by Nancy. In response, Nancy filed an answer and counterclaim

against the Abboushis for trespass. The trial court conducted a bench trial and, after taking the

case under advisement, issued a letter opinion dated October 20, 2021 ("letter opinion"), wherein

the trial court found that the Abboushis had established their claim of adverse possession.[1] On

November 19, 2021, the trial court entered an order memorializing its ruling, appointing a

---

[1] The trial court subsequently issued an amended letter opinion to clarify certain language
employed by the court in its letter opinion. For our purposes, it is enough to note that the
substance of the letter opinion did not change at all.

surveyor to create a new survey establishing a new boundary line in the area over which the trial court granted the Abboushis title by adverse possession, and dismissing Nancy's counterclaim. Upon completion of the survey, the trial court entered a final order on April 26, 2022. This appeal followed.

BACKGROUND[2]

In 1996, the Abboushis purchased the property located at 4401 Kirchner Court, Alexandria, Virginia (the "Abboushi property"), which they currently own. At the time the Abboushis purchased their property, Joseph E. Carroll, Jr. ("Joe") owned and resided at the neighboring property located at 4400 Kirchner Court (the "Veldhuis property"). When the Abboushis purchased their property, they did not obtain a land survey that would have shown the boundary line between the Abboushi property and the Veldhuis property. However, Tarek Abboushi ("Tarek") asked Joe where the boundary line was between the two properties. Joe stated that the boundary line was "a straight line" running along the western edge of Joe's driveway to the east side of a large pine tree at the back of the Abboushi Property. At trial, with the aid of a photograph, Tarek marked the terminus of the line Joe defined with a red dot. According to Tarek, Joe identified the boundary line as running along the side of Joe's driveway back to a pink azalea bush that Kye Abboushi ("Kye") planted in 1996. Tarek testified that from that point forward, the Abboushis began maintaining an area east of the line delineated by Joe (the "disputed area").

When the Abboushis purchased their property, the disputed area had no gardens, plantings, or trellises. During the summer of 1996, Tarek installed stakes, wire, and trellises to

---

[2] On appeal, "this Court must consider the evidence in the light most favorable to [the Abboushis, the prevailing party below]," granting them the benefit of any reasonable inferences. *Young Kee Kim v. Douval Corp.*, 259 Va. 752, 756 (2000) (citing *Deskins v. T.H. Nichols Line Contractor, Inc.*, 234 Va. 185, 186 (1987)). Here, the Abboushis are the prevailing party.

ward off deer. Further, he retained a construction company to replace the trellises periodically over the years. The Abboushis also installed a privacy lattice. Tarek testified that he mowed the grass in the disputed area typically once a week, thatched and seeded the area once a year, and raked the disputed area twice a year. The gardens in the disputed area were mulched by Tarek each spring and fall.

Kye testified that in the fall of 1996 she planted flowers and azaleas in the disputed area. The next year she planted more azaleas and liriope. Each fall since 1997 she cut the liriope back, "constantly" weeded the disputed area, and regularly trimmed the trees and shrubs she had planted there. She also routinely fertilized the area until the Abboushis got a pet. Kye testified that over the years, she removed dead bushes, replanted bushes as necessary, and, after she retired, mowed the grass up to the line delineated by Joe once a week. Kye also placed a large concrete birdbath, a large ornamental urn, and several large flowerpots in the disputed area. Another neighbor, Linda App has resided at 4402 Kirchner Court since 1995. Ms. App testified that she has personally observed Kye mowing and maintaining the disputed area since they moved in and that her efforts in doing so are "like a full-time job for her." Ms. App testified that she has never observed anyone else mow or maintain the disputed area. Finally, the Abboushis also constructed a short stone wall in the disputed area, immediately adjacent to the driveway located on the Veldhuis property.

Tarek testified that there were no obstructions that would prevent Joe from observing the work that Kye and Tarek performed in the disputed area. According to both Kye and Tarek, neither Joe nor his wife ever objected to their planting, mowing, and maintenance of the disputed area. In fact, sometime before Joe passed away, he sought permission from Tarek and Kye to install a two-inch plastic underground pipe along the edge of his driveway in order to direct water away from Joe's garage. Tarek and Kye granted him permission. Tarek thought it was

installed sometime in the mid-2000's. Joe's daughter, and eventual successor in interest in the property, Nancy, testified the pipe was installed in 2009. The pipe was buried under the ground along the edge of the driveway, somewhere under the stone wall. Nancy's husband Evert "John" Veldhuis testified that the pipe runs under the Abboushis' stone wall. He stated that he repaired the "bend" of the pipe where it turns from his drive towards the stone wall and thus is aware of the pipe's location. Tarek testified that the pipe runs along Nancy's side of the stone wall and that its installation benefited both owners, since pooling water allowed mosquitoes to breed and fester in the area.

Joe passed away in February 2009. After his death, Nancy inherited the Veldhuis property and she and John moved in in August 2009. In 2011, the large pine tree used by Joe to delineate the property boundary line in 1996 died; Nancy testified that the pine tree "appeared to be on [the Abboushis'] side" of the adjoining property line. Kye testified that Nancy asked her when the Abboushis planned to have the tree removed, since Nancy feared it could fall onto her house. Tarek testified he and John also discussed the pine tree. At the time, John was having some tree work done and inquired whether Tarek wished to use his tree service to remove the pine tree. Tarek declined, and in or around June 2011 he hired Bartlett Tree Experts to remove the pine tree. It was undisputed that the Abboushis paid Bartlett for this service without contribution from the Veldhuises. Kye testified that she placed a large urn over the stump of the pine tree, which Nancy confirmed she observed and never objected to.

Kye also testified that in 2019 she installed a stone wall, a small metal fence, and a raised bed along the driveway line separating the properties. Both Tarek and Kye testified that these items were installed because the area was sloped and when Kye mowed the grass there, she often worried that the mower could slip or tip into the Veldhuises' vehicles parked near the edge. Kye said that Nancy often complained of grass clippings blowing onto her driveway and the

- 4 -

installation of the wall and raised bed alleviated this issue as well. Kye testified that Nancy never objected to her installation of the wall, fence, or shrubbery. Nancy first objected to the Abboushis' use of the disputed area by letter dated February 10, 2020.[3]

At trial, Nancy argued that the pipe installed by Joe was fatal to the Abboushis' adverse possession claim, as the pipe negated the Abboushis' exclusive possession of the disputed area. The trial court made three important findings in its letter opinion regarding the pipe: (1) the testimony was unclear as to whether the pipe was actually installed *inside* the disputed area; (2) the testimony was unclear as to exactly *when* the pipe was installed; and (3) regardless of when or where the pipe was installed, it was installed *only with the permission* of the Abboushis. Based on the evidence adduced at trial, the trial court found that the Abboushis had proven all the elements of their claim of adverse possession by clear and convincing evidence, including their exclusive possession of the disputed area.

## ANALYSIS

On appeal, Nancy challenges only the element of exclusive possession. She raises four assignments of error; the trial court erred by: (1) finding that the evidence was not sufficient with regard to either the location of the pipe or when it was installed by Nancy's father; (2) finding that no survey or other evidence was presented to establish the precise location of the pipe; (3) finding that the evidence was contradictory as to when Nancy's father installed the pipe; and (4) shifting the burden to Nancy to prove that a pipe located in the disputed area was installed prior to the running of the statutory period, rather than placing the burden on the Abboushis to prove all elements of adverse possession, including the element of exclusive possession, by clear and convincing evidence.

---

[3] The trial court's letter opinion also seems to indicate that Nancy may have asserted her claim to the disputed area before this date, on February 2, 2020. However, whether Nancy first asserted her claim to the disputed area on February 2 or 10 makes no difference to the analysis.

As an initial matter, the Abboushis note that a trial transcript was not made part of the record. Therefore, they argue that the appeal has been procedurally defaulted. Nancy acknowledges that a trial transcript was never made part of the appellate record in this case, but argues in response that it is not necessary to resolve the issues raised on appeal. "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (alterations in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). Here, we hold that the transcript is not indispensable to resolving this case, as we are able to dispose of the case by considering other portions of the record, namely the letter opinion issued by the trial court.

Turning to the assignments of error, on appeal, "this Court must consider the evidence in the light most favorable to [the Abboushis, the prevailing party below]," granting them the benefit of any reasonable inferences. *Young Kee Kim v. Douval Corp.*, 259 Va. 752, 756 (2000) (citing *Deskins v. T.H. Nichols Line Contractor, Inc.*, 234 Va. 185, 186 (1987)). "In determining the proper application of the law of adverse possession to the facts of this case, we review the trial court's decision *de novo*." *Quatannens v. Tyrell*, 268 Va. 360, 365 (2004) (citing *Turner v. Caplan*, 268 Va. 122, 125 (2004)); *see also Barter Found. v. Widener*, 267 Va. 80, 90 (2003) (regarding mixed questions of law and fact, a trial court's application of law is subject to de novo review).

Nancy's assignments of error all center on the trial court's treatment of the pipe installed by Joe. Here, the fact that the Abboushis granted Joe permission to install the pipe in the

disputed area is dispositive. Even assuming that the pipe was actually installed both (1) within the bounds of the disputed area and (2) prior to the Abboushis establishing their claim of right by adverse possession,[4] the Abboushis would still prevail on their claim, as their exclusive possession of the disputed area was unaffected by the installation of the pipe.

The common law regards the fee simple owner of the land as the owner of everything above and below the surface from the sky to the center of the earth. *Clinchfield Coal Corp. v. Compton*, 148 Va. 437, 451 (1927). It is undisputed that Joe, and subsequently Nancy, owned the real property, the disputed area, in fee simple. To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of fifteen years. *Hollander v. World Mission Church*, 255 Va. 440, 442 (1998). The burden is upon the claimant to prove all of the foregoing elements by clear and convincing evidence. *Grappo v. Blanks*, 241 Va. 58, 62 (1991) (citing *Matthews v. W.T. Freeman Co.*, 191 Va. 385, 395 (1950)).

As stated earlier, on appeal, Nancy only challenges the trial court's finding that the Abboushis' possession of the disputed area was exclusive. "One's possession is *exclusive* when it is not in common with others." *Id.* (citing *Providence F. Club v. Miller Co.*, 117 Va. 129, 132-33 (1915)). Nancy argues that because Joe, her successor in interest and the rightful owner of the disputed area, installed the pipe within the bounds of the disputed area, the Abboushis' possession of the disputed area was not exclusive. However, this argument misunderstands the ethos of an adverse possession claim. As the Supreme Court has stated on multiple occasions, the possession must be "under a claim of right and adverse to the right of the true owner." *Id.*

---

[4] "No person shall make an entry on, or bring an action to recover, any land unless within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to such person or to some other person through whom he claims." Code § 8.01-236.

(citing *Va. M.R. Co. v. Barbour*, 97 Va. 118, 123 (1899)). "Actual occupation, use, and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right." *Id.* (citing *Marion Inv. Co. v. Va. Lincoln Furn. Corp.*, 171 Va. 170, 182 (1938)). A claim of right is "a possessor's intention to appropriate and use the land as his own to the exclusion of all others." *Id.* (citing *Marion Inv. Co.*, 171 Va. at 182).

The permission sought by Joe and granted by the Abboushis to install the pipe proves the Abboushis' claim of right, as the act of granting another permission to use your property is a clear indication that the grantor views himself, and no other, as the rightful owner and possessor of the property. Furthermore, the act of seeking permission to install the pipe, as well as Joe's initial delineation of the boundary line, supports the trial court's conclusion that Joe also viewed the Abboushis as the rightful owners of the disputed area. The permission Joe sought in this case was more than a polite attempt to maintain the goodwill of a neighbor for work that Joe already intended to perform. Instead, the trial court found that the pipe was installed only with the permission of the Abboushis. Joe's permissive use of the disputed area does not defeat the Abboushis' claim of exclusive possession, as it is well within the right of the possessor of land to grant or deny access to the land as he or she sees fit. The operable question here is whether Joe used the land *as the rightful* owner; as his use *as a licensee or invitee* would not affect the Abboushis' exclusive possession. It goes without saying that the rightful owner does not need to seek permission to use his own land. Joe's act of seeking permission to use part of the disputed area not only fails to cast doubt on Abboushis' claim of ownership, it strengthens it.

The case of *Leake v. Richardson*, 199 Va. 967 (1958), is informative here. In *Leake*, the claimant, Leake, attempted to assert a claim of adverse possession over a pond, or, in the alternative, a claim of exclusive riparian water rights (via prescriptive easement) to the pond. 199 Va. at 968. The evidence there showed that Leake and her predecessors in interest, after

- 8 -

moving to a home beside the pond, began using the pond to boat and fish, and further, that they used the pond as if they were the exclusive owners, requiring others who desired to boat or fish to request a permit. *Id.* at 973-74. Moreover, Leake and her predecessors in interest employed caretakers to watch over the property and the pond. *Id.* at 972. These caretakers were instructed to keep trespassers out. *Id.* In fact, another property owner who owned land "at the 'lower side of the [pond]'" even testified that he also had a permit from Leake to fish. *Id.*

Notwithstanding the efforts of Leake and her predecessors to exclusively use and possess the pond, the defendants testified that: (1) they also owned property that bordered the pond to the north; (2) during the relevant period, they used the pond "when they desired to do so"; (3) they gave out permits of their own to their friends to fish the pond; and (4) none of the defendants had knowledge that Leake claimed ownership of the entire pond until just before Leake filed her adverse possession action. *Id.* at 974-77. The defendants thereafter disputed Leake's claim of ownership or exclusive riparian rights over the pond. *Id.* at 974-76. Based on that evidence, the trial court found that Leake had not proved her claims of adverse possession or easement by prescription. *Id.* at 968.

On appeal, the Supreme Court of Appeals of Virginia noted that both Leake and the defendants had a possessory interest in the pond. *See id.* at 977 ("[A]n adjoining landowner on an island or fresh water pond takes to the center thereof."). The Court stated that:

> [W]here [land] consists of a fresh water pond or stream surrounded by lands of different persons, whose title as riparian owners include the land under the water to the center of such pond or stream, the acts of ownership must indicate a change of condition, showing a notorious claim of title, accompanied by the essential elements of adverse possession.
> To work a disseisin or ouster of the owner of land, it is not sufficient to set up a mere claim or color of title. The acts relied on must show actual, hostile, exclusive and continuous possession for the period of the statutory bar; acts of such notoriety that the true owner has actual knowledge, or may be presumed to know, of the adverse claim.

*Id.* at 976 (internal citations omitted). The Court, in affirming the trial court's decision, stated that:

> [T]he acts of the complainant, Leake and [her] predecessors in title *were not inconsistent with the rights of the defendants, who used the pond for boating and fishing when they were able and desired to do so, and granted permits to others to do the same.* There was no change in the condition of the pond which affected the rights of the defendants. . . . [T]he right asserted by Leake was *not necessarily anything more than the assertion of a right held in common.*

*Id.* at 978 (emphases added). Further, there was no evidence that the "defendant landowners *knew of, and acquiesced in*, the claim of the complainants." *Id.* at 980 (emphasis added). Because of this, the Court held that the evidence was not sufficient to show that "Leake acquired either the waters and lands comprising [the pond] by adverse possession, or the exclusive right of fishing in said pond by right of prescription." *Id.*

In contrast to the defendants in *Leake*, Joe sought permission before installing the pipe. The Abboushis' use clearly evinced their claim of right over the disputed area, and Joe's permissive use supported that claim. Here, there can be no question that Joe, the actual owner, "knew of, and acquiesced in," the claim of right that the Abboushis asserted over the disputed area. *See id.* The Abboushis' right was more than just a "right held in common" with Joe, it was exclusive. *See id.* at 976-80 (collecting cases on adverse possession and describing the difference between a claim of right that is exclusive versus a claim of right in common with another). This conclusion is further supported by *Helms v. Manspile*, 277 Va. 1 (2009). The Court there found that the Helmses "asserted a claim of right to the property as demonstrated by their use and conduct." *Id.* at 9. The Helmses' possession of a tract of land was adverse to the rightful owners, the Manspiles, where the Manspiles "sought and obtained *permission* from the Helms[es]" to rebuild a fence on the boundary line between the properties. *Id.* at 8 (emphasis added). Though the court did not specifically address how the request and grant of permission

impacted the element of exclusivity, we think it is clear that the Supreme Court intended that such behavior does not defeat an adverse possessor's exclusivity of the real property, but in fact serves to further the claim that the possession was in fact exclusive.

Lastly, the Veldhuises argue that the trial court erred by improperly shifting the burden of proof away from the Abboushis, the party attempting to assert a claim of adverse possession of the disputed land. The Veldhuises point out that the element of exclusivity must be proved as part of the Abboushis' prima facie case, *Grappo*, 241 Va. at 62, and that the trial court improperly shifted this burden of proof by finding that "[n]o survey or other evidence was presented to establish the precise location of the pipe" and that "[i]n the absence of such evidence, and given the contradictory evidence presented at trial, the Court cannot determine where the pipe is located—on [Nancy's] undisputed property or in the Disputed Area."

We find it doubtful that the trial court engaged in any sort of burden shifting, given the extensive evidence that the Abboushis presented, and the trial court accepted, regarding their exclusive use of the disputed area. Nevertheless, assuming without deciding that the trial court erred, any such error was harmless, as this assignment of error is also based on the premise that the pipe installed by Joe undercut the exclusivity of the Abboushis' possession of the land. As we stated above, the location and date of installation of the pipe itself is immaterial to the question of whether the Abboushis presented a prima facie case for the element of exclusivity, given the permission that had been earlier sought by Joe.

CONCLUSION

Because Joe first sought and received the Abboushis' permission, Joe's permissive use of the disputed area did not defeat the Abboushis' exclusive use of the disputed area. The trial

court therefore did not err in finding that all elements of the Abboushis' adverse possession claim had been met.

*Affirmed.*