# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF RICHMOND V. JONES AND ANOTHER.

### March 10, 1910.

### Rehearing denied June 9, 1910.

### Absent, Buchanan and Whittle, JJ.

1. ADVERSE POSSESSION—*Grant from Commonwealth—Actual Ouster.*— A grant from the Commonwealth puts the patentee of the land constructively into possession thereof, and there can be no ouster of that possession except by actual adversary possession—some act or acts palpable to the senses which serve to admonish the patentee that his seisin is molested.

2. ADVERSE POSSESSION—*Failure to Occupy or Improve.*—Proof of absence of occupancy and improvement by fencing, cultivation or otherwise of wild and unoccupied lands, however good the reason may be for not occupying or improving, cannot prove or tend to prove a claim by adversary possession.

3. EJECTMENT—*Evidence—Identifying Land—Opinion Evidence—Experts.*—In an action of ejectment the opinion of a witness, based not only upon the records and papers introduced in evidence in the cause, but upon those which he had examined elsewhere and which had not been introduced before the jury, that the land in controversy was not embraced in an older patent issued to the defendant is not admissible in evidence. The question presented is not the subject of expert or opinion evidence.

4. EJECTMENT—*Plaintiff's Title—Burden of Proof—Action by Adverse Claimant Against a Prior Patentee.*—A plaintiff in ejectment must recover on the strength of his own title, and not upon the weakness of the title of his adversary. The defendant's plea of not guilty puts in issue the plaintiff's entire case, and throws upon him the burden of proving his title. While the burden of going forward with the evidence may change, the real burden of proof rests from the beginning to the end upon the plaintiff in ejectment to maintain his action. In an action of ejectment by an adverse claimant against a prior patentee,

the burden is on the plaintiff to establish his right to recover and it is not necessary for the patentee, who rests secure in his position until the plaintiff has established his case, to identify the land in controversy as the same covered by his patent. The burden is still on the plaintiff to show a right to recover of the patentee.

5. ADVERSE POSSESSION—*Possession of Part Claiming the Whole.*— Actual possession of a part of a tract of land, under color and claim of title to the whole, is possession of the whole, and this principle applies to the lands of the Commonwealth, as against persons not lawfully claiming under her.

6. ADVERSE POSSESSION—*Entry of Junior on Senior Patentee—Extent of Possession.*—If a junior patentee enters upon land in the constructive possession of a senior patentee, and claims title by adverse possession, his possession is limited to that part of the land of which he has the actual occupancy and possession.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of ejectment. Judgment for the plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*H. R. Pollard* and *Geo. Wayne Anderson*, for the plaintiff in error.

*A. C. Goode* and *Hunsdon Cary*, for the defendants in error.

KEITH, P., delivered the opinion of the court.

Jones and another brought an action of ejectment in the Law and Equity Court of the city of Richmond to recover from the city a parcel of land situated in James river. The case was tried before a jury upon the plea of not guilty, and a verdict and judgment rendered for the plaintiffs, which is before us for review upon a writ of error.

The first error asigned is to the admission of certain evidence.

Jones, one of the plaintiffs, was asked: "Would a fence around that island in any way add to the uses to which it can be put?" to which he replied as follows: "The only thing would be to put a fence on the Henrico shore in case of men running around the island and swimming; of course it would benefit in that way; but we always tried to plant trees and vines for that purpose, to keep anybody from seeing us. Of course, in swimming, we would go into the water naked and we didn't want anybody to see us."

It appears that the island or a large part thereof had never been enclosed or cultivated, and was still in a state of nature. The city of Richmond was in possession under a grant from the Commonwealth, dated July 1, 1840, and there could be no ouster of the constructive possession of the older patentee except by actual adversary possession. *Taylor v. Burnsides*, 1 Gratt. 169. The object of the plaintiffs in asking the question was to show that the island, though unenclosed, was at the time of the alleged ouster in the actual occupancy of the plaintiffs, as far as it could be under the particular circumstances of the case.

We think that the admission of this question and answer, while not very material, was erroneous and misleading. To show that a fence or other improvement was not made upon the land, however sufficient the reason may have been, certainly did not tend to show occupancy or any element of adversary possession.

The witness was asked: "Is there a sufficiently large area on that island capable of being cultivated which would warrant any man in cultivating it, taking into consideration its distance from the main-land?" to which the witness gave the answer, "No." This is assigned as error, and the assignment must be sustained for the reason just given.

As we said in *Taylor v. Burnsides, supra,* "Wild and uncultivated lands cannot be made the subject of adversary possession, while they remain completely in a state of nature. A change in

their condition, to some extent, is therefore essential; and the acts by which it is effected are often the strongest evidence of actual possession. Without such change, accomplished or in progress, there can be no residence, cultivation or improvement; no occupation, use or enjoyment. Evidence short of this may prove an adversary claim; but, in the nature of things, cannot establish an adversary possession."

In *Harman* v. *Ratliff*, 93 Va. 249, 24 S. E. 1023, it is said: "While lands remain uncleared, or in a state of nature, they are not susceptible of adverse possession against the older patentee, unless by acts of ownership effecting a change in their condition, and to constitute adverse possession there must be occupancy, cultivation, improvement or other open, notorious and habitual acts of ownership."

Surely the proof of absence of occupancy and improvement by fencing, cultivation or otherwise, however good or sufficient the reason for not building, or not fencing, or not cleaning or performing any other act of ownership may be, cannot prove or tend to prove a claim by adversary possession. If it were otherwise, it is conceivable that lands remaining in a state of nature might be recovered by adversary possession, or the possession might be retained against the older patentee by proving, item by item, and circumstance by circumstance, a plausible excuse to the jury for the failure to do or perform this or that act essential to adversary possession.

A witness was introduced in rebuttal, on behalf of plaintiffs, who testified that he had made a specialty of the examination of land titles, and that he had attempted to identify all islands in James river from the old pump-house up to the Belt Line bridge, and in doing so he had examined every land grant of islands and shoals in James river in the Register of Land Office, and has also examined the records in the Circuit Court of Henrico, and that as a result of that investigation he was unable positively to identify that island

as the island deeded to the city of Richmond. This evidence was excepted to, and the ruling of the court in admitting it is assigned as error.

In *Holleran* v. *Meisel*, 91 Va. 143, 21 S. E. 658, witnesses were introduced to prove that an alleged patent embraced the lands there in controversy, and while admitting that they could not identify it from the entries or memoranda in the books of patents, deeds and other documentary evidence, they gave it as their opinion that it included the land in controversy. The court said: "This was not knowledge. It was not the statement of a fact, but merely an opinion. Even if Carrington, who was an examiner of titles, and Redd, who was county surveyor of Henrico county, were experts, this was not a case in which expert testimony was admissible. It was perfectly proper for them, or either of them, to examine the deeds and other documentary evidence given in before the jury and to state from their knowledge, whether the land in controversy was within the boundaries of the entry purporting to be a memorandum of the issue of a patent to Joshua R. Stapps, but not to give merely their opinions upon the subject. Such mode of identification was inadmissible under the law, and the instruction to the jury that they might regard such opinions as proper evidence to that end, if they believed them to be correct inferences from the evidence in the case, was erroneous."

The case before us is even stronger than that cited, for here the witness was allowed to give his opinion, not only upon records and papers which had been introduced in evidence, but upon those which he had examined elsewhere and which had not been introduced before the jury. In the case cited, the witness was of opinion that the land in controversy was embraced within the deeds and patents which he had examined, while in this case the witness was of opinion that the land in controversy was not embraced in those deeds and patents. In both cases it is the mere opinion of the wit-

ness upon a question which is not the subject of expert or opinion evidence.

The fourth assignment of error, as to the admission of the evidence of T. Crawford Redd, is governed by the same principle.

It is assigned as error that the court gave the following instruction: "The court instructs the jury that if they believe from the evidence that the plaintiffs and those under whom they claim title obtained a grant from the Commonwealth of Virginia for the island in question in the year 1900, it is necessary, to enable the defendant to recover, if she claims title under a grant in the year 1840, that she should identify the island as the one conveyed to her by said grant by a preponderance of evidence, and unless the defendant does identify said island by a preponderance of evidence as the one granted to her by the Commonwealth of Virginia in the year 1840, they must find for the plaintiffs."

The city of Richmond was the defendant, and not the plaintiffs, in this action. A plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of the title of his adversary. This proposition is elementary and needs no authority for its support. When to the plaintiff's demand the defendant pleaded not guilty, it put in issue the plaintiffs' entire case; the burden of proof was never shifted.

Speaking of the burden of proof in *Wallen v. Wallen*, 107 Va. 131, the court said: "Fraud is never presumed, but must always be proved by the party alleging it. This burden never shifts; and while it is necessary for the propounder of a will, the probate of which is resisted on the ground of undue influence, to bring forward evidence to repel evidence of undue influence which has been offered by the other side, the real burden of proof upon the issue of undue influence has not changed, and it is misleading and erroneous, after having instructed the jury correctly on the subject, to further

instruct them that 'the burden of proof in this case lies upon said propounder to satisfy the jury by evidence that the paper writing propounded is the last will and testament of a free and capable testator.' "

In other words, the burden of proof, where the issue is fraud, is always upon the party alleging the fraud, and never shifts, though in the changing aspects of a case the one party or the other may find it necessary to bring forward evidence to repel that of his opponent; and so with the plea of not guilty in an action of ejectment. The burden of proof rests from the beginning to the end upon the plaintiff to maintain his action. Wigmore ch. 86, and especially sec. 2489.

Now, in this case, the court tells the jury that if they believe that the plaintiffs claim title under a grant from the Commonwealth, in the year 1900, to enable the defendant to recover, if it claims title under a grant in 1840, it is necessary that it should identify the island as the one conveyed to it, by a preponderance of the proof, placing the defendant, who has to recover nothing but rests secure in its possession until the plaintiffs have established their case, in the attitude of a plaintiff, who can only recover by adducing in support of his contention a preponderance of proof upon the issue joined.

The sixth instruction was as follows: "The court instructs the jury that even if they believe the island in question is the one which was granted to the city of Richmond under the grant of 1840, yet if the only act of ownership exercised over the island by the city from 1840 to June 1, 1908, was the erection of a dam which did not encroach upon the island or come within 100 feet of it, such act of ownership by the city was not such a possession of the island as will repel the title of the plaintiffs by adverse possession, if such title has been perfected, and has been proven to the satisfaction of the jury by the preponderance of the evidence."

The city of Richmond claims under a grant from the Commonwealth given to. it in 1840.

In *Howdashell* v. *Krenning*, 103 Va. 30, 48 S. E. 491, it is said, that "A grant from the Commonwealth confers constructive seisin, sufficient to enable the patentee or those claiming under him to recover in an action of ejectment. Actual seisin is not necessary."

So that by this patent the city of Richmond acquired the title and under it constructive seisin or possession. The plaintiffs had no color of title down to the year 1900, when they also procured a patent from the State. The adverse possession of the plaintiffs, then (assuming for the present that such adverse possession existed), was confined to the land within their actual occupancy.

Where one enters claiming under a deed or paper title, his possession is extended beyond the portion actually occupied so as to embrace the entire parcel or lot of land described in the deed or paper writing. *Sharp* v. *Shenandoah Furnace Co.*, 100 Va. 27, 40 S. E. 103.

In *Green* v. *Pennington*, 105 Va. 801, 54 S. E. 877, it is said, that "Actual possession of a part of a tract of land, under color and claim of title to the whole, is possession of the whole, and this principle applies to the lands of the Commonwealth, as against persons not lawfully claiming under her." But there is no evidence of claim or color of title down to the year 1900. The adversary possession, therefore, of the plaintiffs, conceding it to have existed at any time, had not ripened into a title, except as to such part of the island as was in the actual occupancy and possession of the plaintiffs.

As was said by Judge Buchanan in the case just cited, "The grant put the first patentee of the land constructively into possession, . . . and, being in the constructive possession of the premises, he cannot be disseised or ousted except by an actual invasion of his boundary by some act or

acts palpable to the senses, and which will serve to admonish him that his seisin is molested; otherwise, as was said by Judge Baldwin, he might be disseised of his freehold not only without his knowledge, but without the possibility of his knowing it.

From what has been said it follows, that the court should have given instruction No. 2, asked for by the defendant, the effect of which would have been to limit the recovery of the plaintiffs by force of adversary possession to that part of the land in controversy so adversely held.

What we have said will be sufficient to settle the law of the case upon a future trial, and for that reason, without passing specifically upon other questions of law presented, or upon the motion to set aside the verdict as contrary to the evidence, we are of opinion that the judgment should be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed.*