## Richmond

WILLIAM M. PECK, ET AL. v. ANNIE BELLE W. DANIEL.

October 11, 1971.

Record No. 7588.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*John Y. Hutcheson,* for appellants.

*Jesse R. Overstreet, Jr.* and *George H. Bagwell,* for appellee.

I'ANSON, J., delivered the opinion of the court.

This action of ejectment was instituted by plaintiff, Annie Belle W. Daniel, against defendants, William M. Peck and Margaret C. Peck, to recover possession of a parcel of land in Mecklenburg County, Virginia, containing approximately one-half of an acre. A jury trial resulted in a verdict and judgment for the plaintiff, and we granted a writ of error to the judgment.

Counsel for all the parties agree that the only issue on appeal is whether the evidence is sufficient to support plaintiff's claim of adverse possession of the land in dispute.

The evidence is before us in narrative form. Plaintiff claims title to the land in dispute by inheritance from her father, C. J. Walker. She traced her title to the property by virtue of the following deeds: By deed dated October 6, 1920, Prudential Realty Corporation conveyed to Buffalo-Lithia Springs Corporation a 1037.52-acre tract in Mecklenburg County, as shown on the plat of Crafton, dated 1919, and entitled "Map of Buffalo-Lithia Springs." Both the deed and plat excepted from the conveyance, so far as is pertinent here, a two and one-half-acre parcel shown as "Williams, Etc.," and one-half of an acre shown as the "Mandy Anderson" parcel. Both parcels lie within tract 7 on the plat.

By deed dated November 11, 1939, C. B. Temple, et als., who had acquired a part of the Buffalo Springs property by deed dated August 17, 1939, conveyed to plaintiff's father a tract of land described in the deed as tract 6, containing 29.47 acres, more or less, shown on Map A of the Buffalo Springs property, as subdivided, made by Fitzgerald, C.E., dated October 1939, which was duly recorded along with the deed.

Tract 6 on the Fitzgerald plat is the western half of tract 7 on the Crafton plat, and the Williams and Anderson parcels shown on the Crafton plat are shown on the Fitzgerald plat as lying within tract 6. Both plats show the Anderson land as one-half of an acre, but each shows different dimensions of the land. The plats show that most of the Anderson one-half acre lies on the north side of Clarksville Road, but a small portion thereof extends to a point on the south side of the road. The Williams parcel lies to the northwest of the Anderson land, and the two parcels do not adjoin on either plat.

Defendants traced their title to two deeds, one to Peggy Anderson and the other to Amanda Anderson. By deed dated April 12, 1879, Henry Overby conveyed to Peggy Anderson a one-half-acre parcel of land described as lying on both sides of the Clarksville-Buffalo Springs road. The deed to Amanda Anderson, dated April 23, 1890, from Joseph T. Poole, et ux, conveyed a one-half-acre lot described as lying on both sides of the Clarksville—Poole's Mill Road and "bounded by the lands * * * of Peggy Anderson, deceased, now said Amanda Anderson's, on the east."

On March 11, 1969, Doris Anderson, et als., the only heirs of Amanda and Peggy Anderson, conveyed to defendants the following property: "All of two contiguous lots, tracts or parcels of land located not far from old Buffalo Springs * * * heretofore well known

as the Amanda Anderson and Peggy Anderson lots, containing a lot of one acre and a lot of twenty-five hundredths of an acre * * * and adjoins the land of Mrs. Annie B. Daniel * * *." The basis for this description is found on the Mecklenburg County tax records.

After obtaining a deed to the Anderson property, the defendants retained a surveyor to plat their land. Before proceeding with the survey, plaintiff's husband, the surveyor and Mr. Peck met on the land to mark the boundary lines of defendants' property. Plaintiff's husband pointed out three iron pins and told the surveyor that the pin he referred to as the "middle" pin marked the northwestern corner of the Anderson property; that the easternmost pin marked the northeastern corner of the property; and that the westernmost pin marked the southeastern corner of the Williams land. The surveyor concluded that he could locate the northern boundary of defendants' two one-half-acre lots by moving the "middle" pin north 2.4 feet, placing it in line with the easternmost and westernmost pins. Thus, over the protests of the plaintiff, the surveyor fixed the northern line of the Anderson property by running a straight line from the easternmost pin to the pin located at what plaintiff claimed was the southeastern corner of the Williams property. A plat was then prepared by defendants' surveyor in accordance with his survey, showing defendants' lot as containing .927 of an acre.

Plaintiff concedes that the land lying between the "middle" iron pin, before it was moved by defendants' surveyor, and the "easternmost" iron pin and extending across the public road is the Anderson land, which was acquired by defendants from the Anderson heirs. She contends, however, that the western half of the land shown on the plat made by defendants' surveyor is that parcel lying between the Williams and Anderson property, as shown on the Crafton and Fitzgerald plats, and this is the land to which she now claims ownership by adverse possession.

The evidence shows that after plaintiff's father acquired the 29.47-acre tract "he used the land just as he did the rest of his farm, which adjoined it." He used it for plant beds for tobacco. He cut wood on the property and used it for cooking, heating his home, and curing tobacco. He cleared the necessary roads for access to the tobacco plant beds and for hauling the wood. Some trees were infested with bugs, and her father cut them down to prevent the bugs from spreading to other pines on the property. Defendants' trailer is located at a place on the disputed property where plaintiff's husband assisted

her father in cutting down an oak tree. In 1942 plaintiff's father granted an easement to the United States government to install a pipe line under the land in dispute. The pipe line was taken up at a later date but the evidence does not show when this occurred. When the Buffalo Springs Corporation owned the 29.47-acre tract, it at one time farmed the land between the Williams and Anderson tracts. Plaintiff said she knew the location of the Anderson land, and that no one had lived on it since 1920.

■ The acts relied upon to establish ownership by adverse possession must show actual, hostile, exclusive, visible and continuous possession for the statutory period of fifteen years. *Leake* v. *Richardson*, 199 Va. 967, 976, 103 S.E.2d 227, 234 (1958); Code § 8-5. Thus the burden of showing the essential elements of adverse possession is upon the person asserting such ownership.

In the case at bar, the narrative statement of the evidence does not show that plaintiff's father so possessed the land in dispute as to satisfy the prerequisites to establish title by adverse possession. We cannot determine from the evidence whether his acts of possession were continuous, visible, and lasted for the statutory period. Further, there is no evidence of any acts done on the land by plaintiff after her father's death to support her claim of adverse possession. The pipe line under the disputed property was not visible and there is no evidence as to how long it ran under the land. Nor does the evidence show when, or for how long, Buffalo Springs Corporation farmed that part of the land in dispute.

■ Plaintiff argues that if the acts relied on were insufficient to establish adverse possession of the one-half of an acre in dispute, she acquired constructive possession of it under our holding in *Roller* v. *Armentrout*, 118 Va. 173, 177, 86 S.E. 906, 907 (1915). It was there held that "The possession of one tract extends in law to an adjoining tract held under color of title by the same person." Thus, she says that her occupancy of the "home farm" would give her title to the disputed land in tract 6, since there was no adverse claimant on the land.

The weakness in this contention is that there is no evidence that the property described by plaintiff as her "home farm" adjoins tract 6. While there is evidence that plaintiff's father at one time owned a farm adjoining the 29.47-acre tract 6, the evidence does not show that he or plaintiff actually occupied that adjoining farm, while also owning tract 6 under color of title, for the statutory period.

For the reasons stated, the judgment of the court below is set aside, the case is reversed, and final judgment is here entered for the defendants.

*Reversed and final judgment.*