# Richmond

## VERNON E. MCINTOSH, ET AL.

### v.

## CHINCOTEAGUE VOLUNTEER FIRE COMPANY, INC.

November 21, 1979.

Record No. 780402.

Present: All the Justices.

*William King Mapp (J. Nicholas Klein, III; Mapp & Mapp,* on brief), for appellants.
*William L. Ward* for appellee.

COCHRAN, J., delivered the opinion of the Court.

Vernon E. McIntosh and Joan A. McIntosh, his wife, filed a bill of complaint in the trial court against Chincoteague Volunteer Fire Company, Inc. (the Fire Company), to remove a cloud on the title to a parcel of land in the Town of Chincoteague. The McIntoshes claimed title by adverse possession; the Fire Company claimed title by deed dated December 6, 1976, from Georgia B. Lewis and husband. Over the objection of the Fire Company, the case was tried before a jury pursuant to the provisions of Code § 55-153,* and the jury

---

\* Code § 55-153 provides:

When a bill in equity is filed to remove a cloud on the title to real estate relief shall not be denied the complainant because he has only an equitable title thereto and is out of possession, but the court shall grant to the complainant such relief as he would be entitled to if he held the legal title and was in possession. If an issue of fact be raised which but for this section would entitle either party to a trial by jury, the court shall, upon the request of the party so entitled, order such issue to be tried by a jury at its bar and the verdict of the jury shall have the like effect as if it had been rendered in an action at law.

returned a verdict in favor of the McIntoshes. However, the trial court sustained the Fire Company's motion to set aside the verdict and enter judgment in its favor and awarded final judgment for the Fire Company by decree entered on January 19, 1978. On appeal, the McIntoshes raise the sole question whether there was sufficient evidence of adverse possession to present a jury issue. If there was any credible evidence to support the jury verdict, we must reverse the judgment of the trial court and reinstate the verdict.

The land in controversy is a lot containing 0.148 acre which was formerly a portion of a larger tract owned by Kendall J. Bunting. In 1920, Kendall J. Bunting and his wife conveyed to their son, Kendall J. Bunting, Jr., a rectangular parcel, fronting 94 feet on what is now Main Street, extending back 357 feet in a southeasterly direction, and bounded on the northeast by what is now Davis Street. Bunting, Jr., and his wife lived in a house fronting on Davis Street near the southeast end of the property. The lot in dispute lying at the rear of the house was not included in the deed to Bunting, Jr. A rough sketch based upon Plaintiff's Exhibit 7 and other evidence in the record, showing the locations of the respective properties, is appended to this opinion.

By a 1950 deed, Bunting, Jr., and Nellie M. Bunting, his wife, conveyed to Bunting, Jr., and his wife, with right of survivorship, the same property conveyed to Bunting, Jr., by his parents. Bunting, Jr., died in 1950. His wife subsequently died leaving her will probated in 1971, in which she devised to her sister, Daisy M. Litchkofski, her land next to her house at 108 Davis Street, her house at 106 Davis Street, and "land on West of Nellie M. Bunting land, running back to the Carnival Grounds on Eastly the land of the Carnival on the South by land of the Carnival". This land to the west of the Nellie M. Bunting land is the parcel in controversy. By 1972 deed, Daisy M. Litchkofski conveyed to the McIntoshes a parcel that included the disputed land.

The deed dated December 6, 1976, from Georgia B. Lewis and husband, conveying the parcel of 0.148 acre to the Fire Company, described the property by metes and bounds. Mrs. Lewis was a daughter of Kendall J. Bunting, Sr., who died leaving his will probated in 1947 in which he devised the residue of his property, after various specific bequests and devises irrelevant to this case, to his widow, Mary A. Bunting, who died in 1955 leaving her will under which she devised and bequeathed all her property, real and personal, to her daughter, Mrs. Lewis.

By a 1967 deed, Mrs. Lewis and her husband conveyed to the

Fire Company another parcel described therein as bounded on the west "by land of Nellie M. Bunting for a distance of one hundred fifty feet (150 ft.), more or less...."

At trial, two neighbors testified as witnesses for the McIntoshes. Mrs. Helen Davis, whose house was located at the corner of Main and Davis Streets, testified that she had resided there since 1929. She knew Bunting, Jr., and his wife, who lived at 108 Davis Street, owned and occupied by the McIntoshes at time of trial. When the Buntings lived there, they used an outdoor toilet on the land in dispute; they also kept chickens in coops, and cultivated blackberries on the back lot. Bunting put up a fence between that land and the adjoining "carnival racetrack" to keep out the horses. The Buntings moved to Philadelphia and lived there for "a long time"; when they returned, they added rooms to the house and installed a bathroom. The outdoor toilet finally "rotted and fell down". Bunting built a second house on Davis Street and rented it to tenants, and a year or two before his death in 1950, Bunting and his wife moved into a new house that he constructed on that part of their land fronting on Main Street. They rented their old house to various tenants; when the McIntoshes bought the property, the back lot was overgrown with weeds and briers.

Mrs. Mazie Koedornick had resided on Davis Street intermittently since 1934. In 1950, she remarried and moved to Delaware; she and her husband then came to Chincoteague and lived for a year in her Davis Street house before moving to Maryland, where she remained for approximately 18 years. Returning once again to Chincoteague, Mrs. Koedornick had been residing in her Davis Street house for the past five years. She had known the Buntings when they lived across the street. She remembered the fence at the back of their property, and the outhouse used for a toilet "just about middleway", and the chicken coops for the chickens that Nellie Bunting raised. The lot was "grown up"; as far as she knew, tenants who rented it after the Buntings moved into their new house had access to the entire property.

The McIntoshes testified that they cleared off much of the land over a period of approximately a year and were building a small hothouse for seeds when they were notified by Mrs. Georgia Lewis that she owned the property. Mrs. Lewis and her husband were then living nearby on Main Street. The McIntoshes continued to use the disputed land until they initiated this litigation, but the validity of their title depends upon the proof of adverse possession by their predecessors in title.

To establish title to land by adverse possession it is necessary to show actual, hostile, exclusive, visible and continuous possession

for the statutory period of 15 years. *Peck* v. *Daniel,* 212 Va. 265, 268, 184 S.E.2d 7, 9 (1971); Code § 8.01-236; 2 Minor on Real Property § 955 (2d ed., Ribble, 1928). As a general rule, adverse possession cannot arise from possession of a child as against his parent. In order to establish adverse possession in such a case, the owner must have had some "clear, definite, or unequivocal notice" of the child's intention to assert exclusive ownership, and the character of the possession is a jury question. *Edmunds* v. *Pike,* 136 Va. 270, 274, 118 S.E. 91, 92 (1923). Where there is no evidence of adverse possession, however, no jury question is presented.

In the present case, the record is devoid of any evidence that Bunting, Sr., or his widow, had any clear, definite, or unequivocal notice that Bunting, Jr., intended to assert exclusive ownership of the disputed land. There is no evidence of hostile use. Erection of the fence by Bunting, Jr., did not separate the portion in controversy from the other land of his father; the fence was constructed merely as a barrier along the property line of the Bunting, Sr., land to prevent incursions by horses running on the adjacent racetrack. There was no interior fence enclosing the parcel of 0.148 acre. Moreover, using the privy, raising chickens, and picking blackberries on the unenclosed lot are actions as consistent with permissive use as with hostile use. Presumptively, such use by a child of his parent's land is permissive, and there is no evidence in this case to rebut the presumption.

The evidence, construed most favorably to the McIntoshes, shows that Bunting, Jr., and his wife possessed and used the 0.148 acre parcel for more than 15 years. Although the evidence does not clearly show that the possession was uninterrupted throughout the statutory period, this fact may reasonably be inferred. There is also evidence that in 1967 Mrs. Lewis executed a deed conveying a parcel, adjoining the land now in dispute, by description from which it might reasonably be inferred that she then believed that Nellie Bunting owned the 0.148 acre lot. Nevertheless, there is no evidence that the use of the property changed in any respect after the death of Bunting, Sr. If the possession was permissive during his life, there is no evidence that it became adverse thereafter. Therefore, the title by adverse possession claimed by the McIntoshes stands or falls upon the evidence of adverse possession by Bunting, Jr., as against his father.

Absent evidence of hostile use and the requisite notice to the parent, we conclude, as did the chancellor, that the evidence is insufficient as a matter of law to establish title by adverse possession by the son against his father. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*