## CIRCUIT COURT OF SHENANDOAH COUNTY

Theodore Graves

v.

Grandstaff

November 1, 1982

Case No. (Chancery) 1619

By JUDGE HENRY H. WHITING

The following is my opinion in this claim of title by adverse possession of certain mountain property in Shenandoah County, Virginia.

Complainants claim title by adverse possession of two adjacent approximately 55-acre tracts of mountain land in Shenandoah County, Virginia. One of the tracts, 56.061 acres (Tract I hereafter), is claimed through color of title by virtue of certain deeds running through the chain of title from the heirs of a common owner, Major George Grandstaff.[1] Tract I came down through George A. Grandstaff, the son of Major George Grandstaff. The adjoining 54.290-acre tract (Tract II hereafter) came through another son, Milton M. Grandstaff, who is shown to have owned the property in 1844, but no deeds or other color of title have been established in this tract. The successors in title to Major George Grandstaff are the parties defendant in this suit.

The evidence in the case established that these two tracts of land for a number of years, certainly more than forty, had been partially fenced and used as one

---

[1] To whom a larger 200-acre tract was patented in 1834.

tract during most of the period. The Court finds the fences to have been maintained by complainants' predecessors during their period of occupancy and probably to have been erected by them and not by the Grandstaffs since the time of adverse occupancy spans so many years, beginning as to Tract I in 1848 and probably about the same time for Tract II.

George Martz, seventy-five years old, and Houston Shatz, sixty-nine years old, residents of the area, testified that they were familiar with the entire property and its use by a Mr. Clinedinst, a predecessor in the record title to Graves who owned the property from 1893 to 1956, who regularly used the land to obtain firewood, planted and cultivated a small peach orchard and permitted someone named Elvie Williams, who had three or four children, to live in a small shack on the tract for a number of years.

Virginia Myers, a sixty-seven year old nearby resident, testified as to the occupancy of Tract II by the claimants, who built a cabin on that tract more than fifteen years before the suit was filed and occupied it as a vacation home. She described the cleared area, the new road constructed to both tracts and the fact that the entire property was always referred to as the Clindedinst-Graves place in common talk in the community.

The claimant Theodore Graves testified that he thought he had purchased both these properties as one tract in 1957 as 50 acres in the deed but said it was and looked to be a good deal more than 50 acres, more like 70 acres. He testified the area was a rugged mountain area but before he bought it he was shown the property boundaries, a large part of which were fenced. The only part unfenced was on steep land and adjacent to the National Forest, but there was no fence or boundary markers between these two tracts. He improved the property with a pond in 1964, a cabin in 1965 and cleared the necessary areas around those properties. He described the Elvie Williams shanty on the property near the road, a root cellar and a road from the shanty, as well as a concrete tank to catch spring water when he bought the property. All those improvements had apparently been there for some time and used by Williams, who had been occupying the property for a number of years, either as a tenant or a licensee of

Clinedinst. Although Graves did not occupy the vacation cabin at all times, the evidence is convincing that it was occupied fairly regularly from the time it was constructed and this occupancy was sufficiently notorious in this rural community to give notice to people in the area of the Graves's claim of ownership. Additionally, Graves testified to the area he cleared and seeded, one of which was four to five acres, these cleared areas being visible from virtually all of the property claimed.

During Graves's ownership and occupancy of the property, a dispute arose as to the water rights with the Town of Edinburg, and the dispute was settled with the Town's recognition of Graves's rights to the water on Tract II.

The road providing access to both tracts was chained and padlocked during Mr. Graves's ownership, and he did not permit hunting on the property except with his permission, the permission being sought and granted for both tracts. Mr. Graves's two sons testified to their use of the property on vacations and other occasions and the visibility of the cabin, which was the primary improvement on Tract II, from different parts of the entire tract and from a view passing down the State highway some distance away.

James F. Weir, a forester, testified to his having been on the property in the 1970's, at which time it gave evidence of having been cut over some time prior thereto (obviously during the period of adverse holding and not as early as 1850) and again in 1980 when he supervised the selective cutting of the timber on the property south of the cabin.

No one testified in contradiction of any of the claims of ownership and/or evidences of adverse possession, nor did any of the parties claiming to be the true owners either appear or testify. The Court finds the above to be the facts.

Counsel agree essentially on the law applicable to this case and to the issues; the dispute primarily is in the application of the facts to those principles. Counsel recognize that each of these adverse possession cases is unique and must be decided upon its own facts, prior cases may be of some value but cannot give a precise ruling applicable to the varying facts and circumstances. *LaDue v. Currell*, 201 Va. 207 (1959).

Both parties, expressly or impliedly, recognize that the requisite period has elapsed, that the complainants have been in exclusive and hostile possession accompanied by a *bona fide* claim of title against all other claimants. The dispute centers around whether the remaining requisites of adverse possession, actual, open, notorious and exclusive possession, have been established by the greater weight of the evidence in this case.

The cases cited by both counsel and the memoranda submitted have been quite helpful to the Court in focusing upon the issues.

This is mountain land and although there must be a change in the condition of any "wild and uncultivated land" in order to establish an adversary possession,[2] the complainants have established a sufficient adversary possession appropriate to this kind of land. While in a settled and cultivated area a greater degree of possession might be necessary, e.g., *LaDue v. Currell, supra*, in a mountainous wild area "a possession less definite might suffice, if it appear that the property were not susceptible of a stricter occupation." *Craig-Giles Iron Co. v. Wickline*, 126 Va. 223, 236 (1919).

In this case, unlike *Wickline*, in which possession was not established because the claimants moved off and on the land and never were in constant possession of it, these complainants have been in constant possession of it during the entire period of time. While it is true the vacation cabin was not occupied all the time, nonetheless they exercised all the indicia of ownership throughout the period, paying taxes, chaining off the road and means of access of others to both tracts, locking and securing the cabin they did occupy, maintaining cleared areas, ponds, as well as other improvements. Moreover, in this case, unlike *Wickline*, the property was fenced on three sides, the remaining side being difficult to fence and unnecessary to be fenced next to the National Forest,

---

[2] Defendants correctly point out that one attempting to establish title by adverse possession to "wild and uncultivated land" cannot excuse a failure to make some change in the condition of the property so as to evidence possession by the mere fact of its wildness or inaccessibility. Richmond v. Jones, 111 Va. 214 (1910); Leake v. Richardson, 199 Va. 967, 978 (1958).

a tenant or permittee lived on the property for a number of years and the property was known throughout the adverse period as the property of the claimants or their predecessors. The old orchard was obviously planted and cultivated by the claimants' predecessors.

In the Court's opinion, the claimants and their predecessors made a sufficient change in condition of the land appropriate to this kind of land to clearly and unequivocally give notice to the world that they held both tracts adversely to all parties, including the true owners. The Court does not deem it necessary to make a distinction between the two tracts, there was no fence between the two tracts and they were both held as one. While the claimants held Tract I under color of title but had no color of title to Tract II, the activities on Tract II, building their cabin, clearing a substantial portion of it, coupled with the fact that that tract was fenced for a large part and parties excluded therefrom by the claimants in barring the road to both tracts, as well as the other activities shown in the evidence, is sufficient in this Court's opinion to indicate an intent to possess all of it.

It is true that they did not change the condition of a large portion of either of these tracts, but the character of the land is such that it was both inadvisable but virtually impossible to do that. Nevertheless, the activities described in the evidence did sufficiently evidence an occupation by these parties to change the property from wild land to property which was under the essential control of these claimants and their predecessors.