# EDWARD W. MAYNARD, ET AL.

## v.

# H.F. HIBBLE

Record No. 911413

June 5, 1992

Present: All the Justices

*Michael T. Soberick (Buxton, Lasris, Soberick & Vannan*, on brief), for appellants.
*C. Flippo Hicks (Martin, Hicks & Ingles*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In H.F. Hibble's declaratory judgment suit to quiet title to real property, we decide whether the evidence is sufficient to sustain a factual finding that he acquired title to the property by adverse possession.

The trial court entered judgment for Hibble following a favorable jury verdict on an issue out of chancery. The defendants, Edward W. Maynard, IV, and Harold W. Smith, appeal.

Some time before September 7, 1901, Thomas Griffin died owning record title to the disputed 9.58 acres in Gloucester County. No one claimed to be Griffin's successor in title after his death. On August 13, 1982, the Governor granted this property to Maynard and Smith after they had bought it in an escheat sale.

When Maynard and Smith attempted to take possession of the 9.58 acres, Hibble claimed that he owned it. Hibble claims title by adverse possession.

Because Hibble prevailed in the trial court on this issue, we view the facts and the reasonable inferences that can be fairly drawn therefrom in the light most favorable to him. *Briley* v. *Farm Fresh, Inc.*, 240 Va. 194, 195, 396 S.E.2d 835, 835 (1990). We also recognize that if there is any credible evidence to support the chancellor's finding of adverse possession, we must affirm the judgment entered upon that verdict. *See McIntosh* v. *Chincoteague Vol. Fire Co.*, 220 Va. 553, 555, 260 S.E.2d 457, 458 (1979).

On September 7, 1901, T.J. Stubblefield conveyed a 14-foot strip of land in Gloucester County to T.W. Lawson and others ''for a road'' running generally east and west on the south side of Stubblefield's property and the north side of the land of ''Thomas Griffin's Estate.'' This road later became Route 631.

Hibble's claim of adverse possession arose in the following manner. On January 10, 1903, T.J. Stubblefield conveyed to Joseph

Cooke a parcel described as 35 acres bounded on the south by "the land of which Thomas Griffin died seized.* On May 17, 1921, Joseph Cooke and his wife conveyed to Joseph C. Cooke (Cooke) the 35 acres that Joseph Cooke had acquired from Stubblefield. However, this deed described the southern boundary of the property as the land of James Selden and contained no reference to the land of the estate of Thomas Griffin.

"In the late 1940's," Cooke rented a cleared field of three to five acres of the 9.58-acre parcel to Amos Lee, who raised watermelons there. This area, next to Route 631, was still clear and "worked" until 1947.

Cooke conveyed two small parcels from the 35-acre parcel on the north side of Route 631. Upon Cooke's death intestate (on a date not shown in the record), the remaining portion of his land descended to Mary Catherine Cooke Wilson.

■ On May 31, 1951, Hibble bought this land from Wilson. It was described as the "unsold portion," containing 30 acres, more or less, of the property that Cooke acquired from Joseph Cooke and his wife, adjoined on the south by the land of James Selden. Before Hibble bought the former Cooke property, the boundaries were pointed out to him on the ground and on the tax map. These boundaries encompassed a parcel on each side of Route 631. The parcel on the north side of Route 631 was what remained of the 35-acre parcel after Cooke's off-conveyances and was later determined to contain 21.02 acres. The parcel on the south side of Route 631 was the disputed 9.58-acre parcel.

Thereafter, intending to "own what that deed called for," Hibble paid the real estate taxes on both parcels, "posted" the 9.58-acre parcel along Route 631, and gave people permission to hunt on the property.

Hibble farmed the 21.02-acre parcel, but not the 9.58-acre parcel, which had no fences or improvements. The previously cultivated watermelon field had been "set in new, young pines about head-high," which Hibble let grow. The rest of the 9.58-acre parcel was covered by large trees. On February 22, 1964, Hibble sold the merchantable timber from the 9.58-acre parcel, but reserved the walnut

---

* Stubblefield's deed makes no mention of his previous conveyance of the 14-foot strip of land to Lawson and others. That strip of land would have been the southern boundary of Stubblefield's land.

trees and the "young pine trees . . . growing in an area of approximately two and one-half (2-1/2) acres." The purchaser had 60 days in which to cut and remove this timber.

From 1968 to 1971, Hibble sold approximately 100 shad net poles each year. Over a two-day period each year, these 35-foot to 42-foot long poles were cut from the disputed land in an area near Route 631, stacked in piles of 20 to 25 poles next to Route 631, and removed the next day. In the "late '70s or mid '70s," Hibble sold as pulp wood trees that had been damaged in an ice storm from the 9.58-acre parcel.

Hibble never heard of Thomas Griffin or of anyone claiming through him until the escheat sale. Even then, Thomas Griffin's property was sold as "unknown." It was only when Maynard and Smith had a surveyor locate the Griffin property and had acquired record title by the Governor's grant, that anyone ever contested Hibble's ownership of the 9.58-acre parcel.

First, Maynard and Smith contend that the land was wild and uncultivated and, therefore, Hibble's claim of adverse possession fails because he failed to establish "[t]he primary fact of actual possession" by evidence of "residence, improvement, cultivation or other open, notorious and habitual acts of ownership." *Craig-Giles Iron Co.* v. *Wickline*, 126 Va. 223, 233, 101 S.E. 225, 229 (1919). However, Maynard and Smith's premise is flawed.

The evidence of cultivation of the two- to three-acre field next to Route 631 and Hibble's use of that field to raise pine trees justifies an inference that the land was not wild and uncultivated, as was the case with the mountain land in *Wickline* where more notoriety of possession was required to give the record owner notice of the adverse claim. *Id.* And, because Hibble claims under color of a title that describes the entire 9.58-acre parcel, his possession of the field that was a smaller part of the 9.58-acre parcel was a possession of the whole. *City of Richmond* v. *Jones*, 111 Va. 214, 221, 68 S.E. 181, 184 (1910).

Next, Maynard and Smith claim that Hibble did not intend to claim adverse possession of the 9.58-acre parcel for the required 15-year period because he only intended to claim through adverse possession after the escheat sale in 1982. We do not agree. The jury could have found that Hibble began to claim adversely from the date of his 1951 deed from Wilson, because he testified that he "intended to own what that deed called for." Furthermore, Hibble's

post-1951 activity in paying taxes, posting the property, giving permission to hunt on the property, and selling timber on several occasions is credible evidence from which the jury could infer that he had shown the required "actual, hostile, exclusive, visible and continuous possession for the statutory period of 15 years." *McIntosh*, 220 Va. at 556-57, 260 S.E.2d at 459-60.

We conclude that the evidence was sufficient to support a factual finding that Hibble acquired title to the property in controversy by adverse possession. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

JUSTICE COMPTON concurs in the result.