Present:  Carrico, C.J., Lacy, Hassell, Keenan, Koontz,
Kinser, JJ., and Stephenson, Senior Justice

YOUNG KEE KIM

v. Record No. 991092   OPINION BY JUSTICE CYNTHIA D. KINSER
                                            April 21, 2000
DOUVAL CORPORATION, d/b/a WASH FAIR

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Jane Marum Roush, Judge


     This appeal arises out of a motion for judgment

seeking ejectment and a counterclaim alleging adverse

possession.  Plaintiff Young Kee Kim sought to eject the

defendant Douval Corporation, d/b/a Wash Fair (Douval),

from a 414 square-foot tract of real estate owned by Kim

and located in the Springfield area of Fairfax County.  In

its counterclaim, Douval asserted that it had acquired

title to the disputed parcel by virtue of its actual,

hostile, exclusive, visible, and continuous use and

possession of the property for more than 15 years.  A jury

returned a verdict in favor of Kim and awarded damages.

However, the trial court granted Douval's post-trial motion

to set aside the verdict and entered judgment for Douval on

its claim of adverse possession.  This appeal followed.

Because we conclude that conflicting inferences can be

drawn from the evidence with regard to the question whether

Douval's possession of the disputed property was under a

claim of right, and because the jury resolved those inferences in favor of Kim, we will reverse the judgment of the circuit court.

                            FACTS

The property at issue in this appeal is part of Parcel 4-A of a subdivision known as the East Garfield Tract. Kim purchased Parcel 4-A in 1994. His predecessors-in-interest, Jung Sik Kim (Jung) and Jung's wife, had owned the property since 1983. Kim's parcel is adjacent to Parcel 4-E of the East Garfield Tract. David N. and Loretta R. Bond purchased Parcel 4-E in 1984. Since then, the Bonds have leased this parcel to Douval.

Douval operates a car wash on Parcel 4-E under the trade name of Wash Fair.[1] Wash Fair has run the car wash since 1961 pursuant to leases with the various owners of Parcel 4-E. Mr. Bond was the manager of Wash Fair from 1962 until 1977, when he and Mrs. Bond acquired all the shares of stock in Douval.

The parties agree that the disputed property is a triangular-shaped tract bounded on one side by the property line between Parcels 4-A and 4-E, and on the other side by a concrete curb situated on Parcel 4-A. The curb has been

_____

[1] Kim operates an auto body repair shop on Parcel 4-A.

in place since at least 1962, but the record does not disclose precisely when, or by whom, it was erected.

According to Mr. Bond, Wash Fair has used the disputed property since 1962. Initially, it utilized the triangular strip of Parcel 4-A as a "driveway" for cars entering and departing the car wash. Wash Fair also erected a sign pole that abutted the concrete curb and placed asphalt on the disputed area over to the curb. In 1969, Wash Fair installed outside lighting at the car wash by placing poles and concrete bases on the disputed property along the curb. In order to lay the electrical conduit for those lights, the asphalt had to be dug up. After the installation of the lights was completed, Wash Fair paved the disputed area with asphalt again. During the ensuing years, Wash Fair asphalted the area on several more occasions. It also erected a fence at the rear of the disputed property in 1969 and replaced the fence in 1982 or 1983. Finally, Wash Fair painted the concrete curb at least twice each year and placed planters in the disputed area in 1990.

Jung testified that Wash Fair installed vacuums on the disputed property approximately six or seven months after he purchased Parcel 4-A in 1983. Jung did not give Wash Fair permission to install the vacuums, nor did Wash Fair request permission from him to do so. Jung also testified

3

that he "didn't mind" Wash Fair's using part of his property because Wash Fair needed it. Jung likewise did not object when Wash Fair paved the disputed property with new asphalt because the asphalt benefited his property.

Mr. Bond admitted that Wash Fair used the disputed property even though he knew it was not part of Parcel 4-E. However, he asserted that no one instructed Wash Fair not to use or make improvements on the triangular strip of Parcel 4-A over to the curb. Mr. Bond further testified that Wash Fair never received permission from any of the owners of Parcel 4-A to occupy and use the disputed portion of that parcel.

However, Kim, through his attorney William C. Thomas, offered Douval a license agreement to use the disputed strip of Parcel 4-A in 1995. According to Thomas, Mr. Bond claimed at that time that he did not know about the encroachment on Parcel 4-A and asserted that he "had built entirely on the Wash Fair property."

Kim established his claim for ejectment by introducing evidence to prove his chain of title for Parcel 4-A and his damages resulting from Douval's actions. Kim also testified that he asked Douval to remove the vacuums from the disputed strip of Parcel 4-A and that it refused to do so.

4

ANALYSIS

Pursuant to Code § 8.01-430, a trial court can set aside the verdict of a jury in a civil action when the verdict is contrary to the evidence or is without evidence to support it.  However, the trial court's authority to do so is limited by the following principles:

> If there is a conflict in the testimony on a material point, or if reasonable [persons] may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury.  The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval.

Lane v. Scott, 220 Va. 578, 581-82, 260 S.E.2d 238, 240 (1979), cert. denied, 446 U.S. 986 (1980) (quoting Commonwealth v. McNeely, 204 Va. 218, 222, 129 S.E.2d 687, 689-90 (1963)).  Accord Henderson v. Gay, 245 Va. 478, 480-81, 429 S.E.2d 14, 16 (1993).  In addition, "when conflicting inferences have been resolved by a jury and those necessarily underlying the conclusion reflected in the verdict are reasonably deducible from the evidence, a trial judge should not set the verdict aside."  Lane, 220 Va. at 582, 260 S.E.2d at 240.

In reviewing the circuit court's judgment, we are mindful of the fact that the trial judge disapproved the

5

jury verdict in this case.  Thus, that verdict is not entitled to the same weight as one that a trial judge has approved.  Deskins v. T.H. Nichols Line Contractor, Inc., 234 Va. 185, 186, 361 S.E.2d 125, 125 (1987) (citing Cloutier, Adm'r v. Virginia Gas Distrib. Corp., 202 Va. 646, 651, 119 S.E.2d 234, 237 (1961)).  Nevertheless, this Court must consider the evidence in the light most favorable to Kim, who was the recipient of the jury verdict.  Deskins, 234 Va. at 186, 361 S.E.2d at 125 (citing Neighbors v. Moore, 216 Va. 514, 515, 219 S.E.2d 692, 694 (1975)).

"To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years." Grappo v. Blanks, 241 Va. 58, 61-62, 400 S.E.2d 168, 170-71 (1991) (citing McIntosh v. Chincoteague Volunteer Fire Co., 220 Va. 553, 556-57, 260 S.E.2d 457, 459-60 (1979); Peck v. Daniel, 212 Va. 265, 268, 184 S.E.2d 7, 9 (1971); Leake v. Richardson, 199 Va. 967, 976, 103 S.E.2d 227, 234 (1958); Code § 8.01-236).  The claimant bears the burden of proving the elements of adverse possession by clear and convincing evidence.  Calhoun v. Woods, 246 Va. 41, 43, 431 S.E.2d

285, 287 (1993); Matthews v. W.T. Freeman Co., Inc., 191 Va. 385, 395, 60 S.E.2d 909, 914 (1950).

Kim acknowledges that Douval's possession of the disputed strip of Parcel 4-A has been open and notorious. However, he argues that there is a conflict in the evidence and the reasonable inferences that can be drawn from the evidence with regard to the question whether Douval's possession was "hostile" under a claim of right. In fact, the circuit court noted in its letter opinion that this issue was the only genuinely disputed one at trial.[2]

It is well-established that a claimant's possession is "hostile" if it is under "a claim of right and adverse to the right of the true owner." Grappo, 241 Va. at 62, 400 S.E.2d at 171 (citing Virginia Midland R.R. Co. v. Barbour, 97 Va. 118, 123, 33 S.E. 554, 556 (1899)). The phrase "claim of right," when used in the context of adverse possession, refers to the intent of a claimant to use land as the claimant's own to the exclusion of all others. Marion Inv. Co. v. Virginia Lincoln Furniture Corp., 171 Va. 170, 182, 198 S.E. 508, 513 (1938). The existence of a claim of right does not depend on the claimant having any

---

[2] Kim also argued that there is a conflict in the evidence with regard to the issues whether Douval's possession was "exclusive" and whether the possession was continuous for the requisite 15-year statutory period.

actual title or right to the property.  Id.  However,

"[w]here the original entry on another's land was by

agreement or permission, possession regardless of its

duration presumptively continues as it began, in the

absence of an explicit disclaimer."  Matthews, 191 Va. at

395, 60 S.E.2d at 914.  Accord Alford v. Alford, 236 Va.

194, 197, 372 S.E.2d 389, 390 (1988); Thompson v. Camper,

106 Va. 315, 318, 55 S.E. 674, 675 (1906).

As Kim notes, the record does not indicate the

circumstances under which Wash Fair's possession of the

disputed strip of Parcel 4-A began.  Wash Fair commenced

operating the car wash in 1961.  Mr. Bond testified that

Wash Fair was using the disputed property in 1962.

However, we do not know whether, at that time, Wash

Fair's landlord, who owned Parcel 4-E, obtained permission

from the owner of Parcel 4-A for Wash Fair to utilize the

disputed property.  Although Mr. Bond began managing Wash

Fair in 1962 and testified that he had no knowledge of any

agreement between Wash Fair's landlord and the owner of

Parcel 4-A with regard to Wash Fair's use of the disputed

property, he and Mrs. Bond did not become Wash Fair's

landlord until 1984 when they purchased Parcel 4-E.  Thus,

he would not have been a party to any such agreement prior

to 1984.  Mr. Bond admitted that some of the previous

8

owners are deceased and that he therefore could not confer with them about whether any such agreement existed before he and Mrs. Bond became Wash Fair's landlord.

In contrast, we know that Jung, a prior owner of Parcel 4-A, did not give Wash Fair permission to install the vacuums on the disputed strip of property in 1983, shortly after he purchased Parcel 4-A.  Also, Kim asked Douval to remove those vacuums in 1995, but Douval refused to do so.

Relying on this Court's decision in Marion Inv. Co., Douval argues that its actual occupation, use, and improvement of the disputed property as if it were in fact an owner establishes that its possession was under a claim of right.  We agree that a claim of right can be inferred from unequivocal conduct that is inconsistent with any other reasonable inference.  See Sims v. Capper, 133 Va. 278, 287, 112 S.E. 676, 679 (1922).  However, whether the conduct relied upon is sufficient to establish a claim of right is generally a question for the jury.  Marion Inv. Co., 171 Va. at 182, 198 S.E. at 513-14.

Upon reviewing the evidence in the light most favorable to Kim, we conclude that conflicting inferences can be drawn from the evidence with regard to the questions whether Wash Fair began its possession and use of the

disputed property under a claim of right, or with the permission of the owner of Parcel 4-A; whether, if Wash Fair's possession started with permission from the owner of Parcel 4-A, the possession later changed to one under a claim of right; and whether any possession by Wash Fair under a claim of right has continued for the requisite 15-year statutory period.  The jury resolved the conflicting inferences in favor of Kim, and the inferences "necessarily underlying the conclusion reflected in the verdict are reasonably deducible from the evidence."  <u>Lane</u>, 220 Va. at 582, 260 S.E.2d at 240.  Thus, we conclude that the circuit court erred in setting aside the jury verdict.

For these reasons, we will reverse the judgment of the circuit court, reinstate the jury verdict, and enter final judgment in favor of Kim.[3]

<u>Reversed and final judgment</u>.

---

[3] We do not need to address the remaining assignments of error.