## CIRCUIT COURT OF ACCOMACK COUNTY

Alan Hunt
and Margot Hunt

v.

Section 1, Oyster Bay
Community Association

January 28, 2003

Case No. (Chancery) 02CH137

BY JUDGE GLEN A. TYLER

The right to exclusive ownership of real property by individuals is almost sacred in English and American culture. Consequently, the stability of land titles is of paramount importance. In order to assure stability, disputes over the ownership of land must be put to rest within certain time limits. That is accomplished in the law by statutes of limitation. In the context of resolving questions of ownership, possession is the evidence most compelling. In order to promote confidence in the law among the citizens, the law focuses equally upon the mental attitude of those in possession of disputed land and upon the ability of record title holders who are out of possession to know actually or constructively of the possession and of a claim to ownership by such possessors. When the matter comes to litigation, it evolves into a contest between the true record owner and the possessor who believes he is or ought to be the owner. In Virginia if more than fifteen years have elapsed and the possessor can prove certain facts, then his title and the rights arising from title will be established and enforced by the courts.

In this suit in equity brought by Complainants who claim adverse possession of the land in dispute, the Court is asked to establish their title against the record title holder. There is no question about the fact that the

Respondent, The Oyster Bay Community Association, holds valid record title to the land in dispute. The issue is whether the Complainants, Alan and Margot Hunt, have satisfied all the elements for acquiring title by adverse possession under the law in this Commonwealth.

The pleadings and stipulations establish certain facts. The Hunts are husband and wife. They own in fee simple by deed of record Lot 1, a residential lot, fronting approximately 90 feet on Big Oyster Bay in the Oyster Bay subdivision on Chincoteague Island in Accomack County, Virginia. They also own in fee simple by the same deed of record a small lot which is 20 feet wide on Big Oyster Bay and 50 feet long. Their two lots are separated by the parcel of land which is the subject of this suit. It is twenty feet wide, fronts on Big Oyster Bay and runs back approximately 188 feet along the southeastern boundary of Complainants' Lot 1 and then continues on farther adjoining the lands of others. It is referred to in the records as a buffer strip. Record title to the buffer strip is held in fee simple by the Respondent, a Virginia corporation. A recorded plat, referred to in the deed by which the Hunts acquired their two lots, shows the Association's strip of land adjacent to Lot 1 and describes all appropriate dimensions.

The properties of the parties to this suit were all previously owned by a common predecessor in title.

At a bench trial of this cause on the 10th day of January 2003, the Complainants sought to establish their title through the testimony of the Complainant, Margot Hunt, ore tenus, and, by depositions, two witnesses who were previous record owners of the Complainants' lots.

The exhibits that were admitted in evidence for the Complainants disclose that the Hunts acquired their two lots by a single deed dated August 26, 1988, and recorded in the Accomack County land records on September 23, 1988. The Respondent acquired the twenty-foot wide buffer strip of land, the portion of which is in dispute, by deed recorded in the Accomack County land records in 1985. This suit was filed on June 19, 2002. The Hunts' immediate predecessor in title to the two lots was a partnership, serving as trustee to hold bare legal title, which acquired and recorded its deed on the same date as the Hunts recorded their deed, apparently in a tax-free exchange arrangement. The trustee was essentially an agent for the sellers and buyers. The individuals who were the immediate equitable predecessors of the Hunts were Julian and Stephanie Steyn who had acquired the same two parcels in 1984 from Peter and Joanne Yates, who had acquired the two lots in 1972. The descriptions in all the deeds referred to above are essentially the same, and all refer to the buffer strip and the subdivision plat which shows the strip.

Apparently the same lawyer, Gerald M. West of Chincoteague, prepared all three of the deeds in the chain of title to the two lots of the Hunts referred to and, according to the testimony, represented the Hunts at the closing of their purchase.

Peter Yates's deposition was offered by the Complainants. He had actual knowledge of the existence of the buffer strip during the time from 1972 to 1984, when he owned what is now deeded to the Hunts, though there was nothing visible to him that physically marked its location adjacent to Lot 1 on the ground. It is clear from his deposition that he did not know where the boundaries of the buffer strip were actually located, yet he stated that he planted and grew grass on the strip because it looked altogether like one residential lot. In his testimony, he referred to a drawing which counsel prepared from a recent surveyor's plat, which drawing is attached as a part of his deposition. He also installed cut-off telephone poles that extended above the ground three feet roughly, to prevent motor vehicles from leaving the roadway in front of the house he built on Lot 1 and encroaching on his yard and on the buffer strip. He did not know whether his poles were actually in the buffer strip. Notwithstanding the foregoing, Yates did not intend to assert any claim of right to ownership of the buffer strip according to his deposition.

Stephanie Steyn's deposition was offered by the Complainants. She and her husband, Julian, owned the property now deeded to the Hunts during the first part of what would be the fifteen-year limitation period for purposes of this suit, and the Hunts owned it during the longer last part, if the two parts are to be considered for tacking. Ms. Steyn referred in her deposition to a copy, attached to her deposition, of the same drawing that was appended to Yates's deposition. She did not recall actually knowing of the buffer strip during the time when she owned her property. Yet it was her understanding that her property, designated as Lot 1, ran to a certain concrete seawall. The plat shows, and she identified, the seawall or bulkhead along a portion of the southeast boundary, the far side, of the buffer strip. Ms. Steyn stated unequivocally on direct and cross-examination that, while she owned her property, she claimed all the property, including what is actually the disputed strip, all the way to the seawall. The land that is Lot 1 and the strip all looked the same to her. There were no markers or objects to delineate one from the other, and she mowed and maintained it all together as her yard over to the seawall and westward the full extent of her lot along a line extending westward from the seawall.

Ms. Hunt testified, ore tenus. The Complainants always believed that their deeded lot No. 1 included what is the portion of the buffer strip adjacent

to Lot 1. They possessed it accordingly in keeping with all the elements of adverse possession.

There is no question about the fact that Complainants used the portion of the buffer strip contiguous to their Lot 1, by cutting grass and planting other plants, including a vegetable garden, and building a berm on the strip. She was mistaken about where her boundary line was; her testimony was that the mistake was that she thought she had no adjoining property owner at all in the place where she maintained her yard and thus possessed the property adjacent to Lot 1, which is the buffer strip. Her testimony made it clear that Complainants possessed it in keeping with all the elements of adverse possession.

To establish title to the real property which is the buffer strip adjacent to them by adverse possession, the Complainants must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of fifteen years. *Grappo v. Blanks*, 241 Va. 58 (1991) (citing *McIntosh v. Chincoteague Vol. Fire Co.*, 220 Va. 553 (1979); Va. Code Ann. § 8.01-236).

The Complainants must prove the elements of adverse possession by clear and convincing evidence. *Calhoun v. Woods*, 246 Va. 41 (1993).

The Court finds that the Complainants and their immediate predecessors in title, the Steyns, were mistaken as to the existence of neighboring property and as to the location of Complainants' actual boundary line delineating that neighboring property. The effect of that mistake was that both the Steyns and the Hunts adversely possessed the buffer strip adjacent to Lot 1 with the requisite claim of right. That the Complainants and their predecessors, the Steyns, intended to possess the land up to a definite line on the ground is established by proof of the location of the concrete seawall or bulkhead. That object, though it did not extend the entire length, established the claimed line, which is the southeast boundary of the buffer strip. See *Hollander v. World Mission Church*, 255 Va. 440 (1998). The evidence is clear and convincing that both the Steyns and Hunts were in actual possession of the disputed land because they used and occupied it as their yard and garden in such an obvious way that Respondent is presumed to have known of it. And the Court finds specifically that all elements of adverse possession were likewise proved.

The Court will enter an order establishing title in fee simple in the Complainants in the buffer strip for the entire length of their southeast boundary of Lot 1 according to the plat admitted as Exhibit No. 2.