Present:  All the Justices

T.L. GARDEN & ASSOCIATES, T/A
LIFE SAFETY SYSTEMS

v.  Record No. 001849     OPINION BY JUSTICE ELIZABETH B. LACY
                                    June 8, 2001
FIRST SAVINGS BANK OF VIRGINIA

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard J. Jamborsky, Judge Designate

In this appeal arising from a bank's agreement to reserve funds for payment of a subcontractor's equipment costs, we must determine whether the trial court properly set aside a verdict in favor of the subcontractor.

Although the trial court set aside the jury verdict, we recite the facts and all reasonable inferences in the light most favorable to T.L. Garden & Associates, Inc. (T.L. Garden), the recipient of the jury verdict.  Kim v. Douval Corp., 259 Va. 752, 756, 529 S.E.2d 92, 95 (2000).  On April 9, 1998, T.L. Garden entered into a contract with BIP Electrical, Inc. (BIP) to install a fire alarm system.  The total cost of the subcontract was $314,000.  The fire alarm system was part of a $1.4 million contract between BIP and the federal government for the construction of the Naval Annex to the Pentagon.

Shortly after executing the contract, T.L. Garden learned that BIP had a negative credit history and informed BIP that it required additional safeguards to assure payment.  T.L.

Garden also had the equipment for the project delivered to its warehouse, rather than the construction site, to assure payment before delivery. On April 23, 1998, T.L. Garden sent Invoice Number 25701 to BIP for $289,000, the entire cost of the equipment.

First Savings Bank of Virginia (FSB) conducted the project accounting for BIP's contract, which included processing payments of T.L. Garden's invoices. Unknown to T.L. Garden, BIP had previously assigned to FSB payments due from the federal government on the Naval Annex project as security for amounts BIP owed FSB on two promissory notes, a line of credit, and a variable interest commercial note. At BIP's suggestion, Thomas Garden, president of T.L. Garden, called Jeffery Constantz, president of FSB, to explore options for guaranteeing payment to T.L. Garden. Constantz declined T.L. Garden's request that FSB execute a guaranty in the form of a letter of credit. Instead, Constantz agreed to reserve sufficient funds received under BIP's contract with the federal government to pay T.L. Garden's equipment costs.

On April 29, 1998, Constantz sent a letter to T.L. Garden, stating in pertinent part:

> I am writing this letter on behalf of BIP, Inc[.] to confirm that, upon payment from the government, FSB will reserve an amount from contract number MDA9469763003 sufficient to pay your invoice for equipment supplied for this contract.

2

The letter also contained discount provisions for early payments and asked that T.L. Garden acknowledge the terms set out in the letter. T.L. Garden signed the letter on May 5 and that same day sent a letter to FSB regarding its Invoice No. 25701. That letter stated that Invoice No. 25701 had been "[r]evised due to Partial Shipment 5/5/98" and $197,328 was due June 5. On May 21, FSB received BIP's initial $431,781.82 payment from the federal government. From this payment, FSB distributed $27,565.29 to BIP, approximately $5,900 to two BIP creditors, $66,113.95 to T.L. Garden, and retained approximately $332,000 in full satisfaction of BIP's indebtedness to FSB on its line of credit.

On June 4, FSB received BIP's second payment from the federal government. From those funds, FSB paid T.L. Garden the $131,214.05 balance due on the May 5 invoice. FSB paid the remainder of the second payment to BIP for its operating expenses. On June 9, T.L. Garden submitted Invoice No. 25878 requesting payment of $110,000 by July 9, which it subsequently revised, increasing the amount to $116,672.

On July 16, BIP filed a petition for Chapter 11 Reorganization in the United States Bankruptcy Court for the Eastern District of Virginia. On July 25, FSB received BIP's third payment from the federal government in the amount of

3

$189,061.17. Because BIP had filed for bankruptcy, FSB was required to deposit the entire third payment in the bankruptcy court for the benefit of BIP's creditors. As part of the bankruptcy proceeding, T.L. Garden received $60,000, leaving an unpaid balance of approximately $30,000 for the equipment costs.

In its motion for judgment, T.L. Garden sought recovery of the unpaid $30,000 balance on the theory that FSB's April 29 letter fraudulently induced T.L. Garden to perform its subcontract with BIP. In support of its position, T.L. Garden produced evidence at trial showing that Constantz did not inform T.L. Garden that BIP was indebted to FSB and had assigned the construction contract to FSB, that Constantz told Thomas Garden that FSB would reserve sufficient funds to cover the cost of the equipment supplied by T.L. Garden, and that Constantz told Thomas Garden that BIP would not receive any money from the contract until T.L. Garden had been paid in full. On appeal, T.L. Garden contends that this evidence was sufficient to support the jury's verdict in its favor and the trial court erred in setting aside that verdict.

In reaching a verdict, a jury is required to follow the instructions given by the court. In this case, the jury was instructed by the court as follows:

If you find that the letter dated April 29, 1998, which is Joint Exhibit 1, required the Defendant to reserve <u>from the first payment</u> it received by assignment of the Government Contract, the full amount of Plaintiff's subcontract with BIP, and if you further believe by clear and convincing evidence that at the time the Defendant signed the April 29, 1998 letter it intentionally and knowingly made a false representation of a material fact to the Plaintiff with the intention to mislead Plaintiff into taking action based upon the representation, and that Plaintiff took action in reliance on the representation and that Plaintiff's reliance on the representation caused Plaintiff damage, then you shall return your verdict in favor of Plaintiff. (emphasis added)

This instruction was an agreed instruction and became the law of the case. <u>Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.</u>, 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989). In order for T.L. Garden to prevail under this instruction, the jury had to find that the April 29 letter required FSB to pay T.L. Garden the full amount of its subcontract with BIP "<u>from the first payment</u>" FSB received from the federal government.

However, the April 29 letter states that FSB "will reserve an amount <u>from contract number MDA9469763003</u> sufficient to pay [T.L. Garden's] invoice for equipment supplied for this contract." (emphasis added) This language is not ambiguous. Nothing in the letter identifies any specific payment from the federal government as the source of payment to T.L. Garden. Because the letter cannot be construed to require that T.L. Garden be paid from the first payment made by the federal

5

government, as required by the jury instruction, the evidence was insufficient, as a matter of law, to support a jury verdict in favor of T.L. Garden.  The trial court, therefore, correctly set aside that verdict.

Accordingly, for the reasons stated, we will affirm the judgment of the trial court setting aside the jury verdict and entering judgment in favor of FSB.

Affirmed.